ITT COMMERCIAL FINANCE CORP., et al., Respondents,

v.

MID–AMERICA MARINE SUPPLY CORP., d/b/a George Walker's Earth City Marine, et al., Appellants.

No. 75002.

Supreme Court of Missouri, En Banc.

April 20, 1993.

Justin C. Cordonnier, Thomas B. Weaver, St. Louis, for appellants.

William R. Bay, Mike W. Bartolacci, St. Louis, for respondents.

ROBERTSON, Chief Justice.

This case raises important issues relating to summary judgment practice. Here, we consider which party bears the burden of establishing the absence of genuine issues of material fact and a legal right to judgment when the party seeking summary judgment is a "claimant" and the non-moving party has raised an affirmative defense.

Plaintiffs, ITT Commercial Finance Corporation (ITT) and Mercantile Bank of St. Louis, N.A. (Mercantile), sued Mid–America Marine Supply Corporation (Mid–America), their debtor, and George Walker, William Rice and Scott Evert, guarantors of Mid–America's debts. The trial court sustained motions by ITT and Mercantile for summary judgment on their claims against Evert and against Evert on his counterclaims. Evert appealed. The Court of Appeals, Eastern District, affirmed. We granted transfer, *Mo. Const. art. V, § 10*, and now affirm.

## I.

In 1986, George Walker founded Mid–America, a marine sales and supply business. As with most retail sales ventures, Mid–America's financial needs focused on initial inventory acquisition and ongoing "floor-plan" financing. Walker turned to ITT. ITT agreed to provide financing for Mid–America in exchange for Mid–America's promissory note, a security interest in all of its inventory, machinery, equipment and fixtures, and personal guaranties of the entire indebtedness from Walker, Rice and Evert. Walker also secured "startup" financing from Mercantile in the amount of $150,000. As part of its inducement to issue this loan, Mercantile obtained a security agreement and written guaranties of the debt from Walker, Rice and Evert. Evert limited his guaranty to Mercantile to a one-third share of the principal sum, i.e., $50,000.

Mid–America closed the finance agreement with ITT on January 28, 1986; the Mercantile loan closed a week later. By the end of the summer of 1987, Mid–America had defaulted on its obligations to ITT and Mercantile and George Walker had failed to make good on his guaranties.

On November 24, 1987, Mercantile and ITT brought suit to replevin its collateral and to recover on Mid–America's promissory notes and the guaranties of Walker, Rice and Evert. The court ordered replevin. The lenders sold the collateral and applied the proceeds to the debts. Mercantile and ITT took default judgments against Mid–America and Walker on July 20, 1989, and received summary judgments against Rice on December 18, 1990. Those judgments remain unsatisfied and are not involved in this appeal.

On September 15, 1988, Evert filed his answer to the first amended petitions of Mercantile and ITT. Evert asserted, as affirmative defenses, that the plaintiffs were "barred from any relief by estoppel, waiver, duress and a failure of consideration;" that the plaintiffs had disposed of the collateral in a commercially unreasonable way; and that the plaintiffs had fraudulently induced him to participate in the transactions.

Nearly two years later, Evert filed an amended answer. He dropped the defenses of estoppel, waiver, duress and failure of consideration against ITT and substituted the affirmative defense that ITT had "altered the instruments in question." Evert's amended answer retained the estoppel, waiver, duress and failure of consideration defenses as against Mercantile, however, and reiterated the affirmative defenses of fraudulent inducement and commercial unreasonableness against both plaintiffs. Finally, Evert's amended answer included counterclaims against ITT and Mercantile for fraudulent misrepresentation. He claimed that plaintiffs' agents' misrepresentations induced him to sign the guaranties. Evert sought $200,000 in actual damages and $2,000,000 in punitive damages.

On September 4, 1990, ITT and Mercantile moved for summary judgment on their claims against Evert and on his counterclaims against them. Though he had had nearly three years to conduct discovery and gather his facts, Evert's response to these motions consisted simply of his own affidavit reiterating the allegations of fraudulent inducement and the affidavit of his handwriting expert to the effect that one of the three ITT guaranties bearing Evert's signature had been forged.

Following a hearing, the trial court sustained Mercantile's motion for summary judgment, assessing damages at $50,000 of principal, plus post-judgment interest and attorney's fees in excess of $13,000. On ITT's claim, the court also granted summary judgment against Evert, assessing damages at slightly less than $250,000 of principal (after reduction for the sale of collateral), just over $100,000 of contract interest, plus post-judgment interest and attorney's fees in excess of $39,000, and costs of repossession and sale of more than $24,000. The trial court also sustained Mercantile's and ITT's motions for summary judgment on Evert's counterclaims.

## II.

### A. The Standard of Review

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. *Zafft v. Eli Lilly*, 676 S.W.2d 241, 244 (Mo. banc 1984); *Cooper v. Finke*, 376 S.W.2d 225, 228 (Mo.1964). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Cherry v. City of Hayti Heights*, 563 S.W.2d 72, 75 (Mo. banc 1978); *Dietrich v. Pulitzer Publishing Company*, 422 S.W.2d 330, 333 (Mo.1986). We accord the non-movant the benefit of all reasonable inferences from the record. *Martin v. City of Washington*, 848 S.W.2d 487, 489 (Mo. banc 1993); *Madden v. C & K Barbeque Carryout, Inc.*, 758 S.W.2d 59, 61 (Mo. banc 1988).

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *E.O. Dorsch Electric Co. v. Plaza Const. Co.*, 413 S.W.2d 167, 169 (Mo.1967). The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Elliott v. Harris*, 423 S.W.2d 831, 834 (Mo. banc 1968); *Swink v. Swink*, 367 S.W.2d 575, 578 (Mo.1963).

### B. Foundational Concerns

The Rules of Civil Procedure recognize three procedures by which the trial court can pretermit the need for a full trial on the merits. The rules encourage use of these procedures to permit resolution of claims as early as they are properly raised in order to avoid the expense and delay of meritless claims or defenses and to permit the efficient use of scarce judicial resources.

Where the pleadings fail to state a cause of action under the law or fail to state facts entitling the party to relief, the trial court may dismiss the lawsuit. Where the evidence adduced by a plaintiff at trial fails to prove the elements of the plaintiff's cause of action, a motion for a directed verdict is properly sustained.

The third procedural tool, summary judgment, lies between the other two and is the subject of this case. Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Rule 74.04*. Summary judgment proceeds from an analytical predicate that, where the facts are not in dispute, a prevailing party can be determined as a matter of law. Rule 74.04 establishes a step-by-step procedure by which such cases can be identified and resolved. Lack of adherence to the text of the rule, however, and a lingering disfavor of summary judgment, have robbed this rule of it usefulness. This opinion, it is intended, will clarify the analysis and dispel any remaining doubt that summary judgments play an essential role in our system.

In the present case we consider which party bears the burden of establishing a legal right to judgment and the absence of genuine dispute as to the material facts when the party seeking summary judgment is a "claimant" and the non-movant has raised an affirmative defense. ITT and Mercantile argue that they need only establish the elements of their causes of action to force the defendant to come forward with evidence showing the existence of a genuine issue of material fact as to his affirmative defenses. Not unexpectedly, Evert disagrees. He asserts that the movants must show the absence of any genuine issues of material fact, not only as to the elements of their claims, but also as to his affirmative defenses.

Prior to considering the merits of the parties' arguments, we believe a discussion

of the historical role of summary judgment in Missouri, in the context of the underlying theory of pleading, is of some assistance.

### 1. *History of Summary Judgment*

In 1849, Missouri became the second state in the union to adopt a comprehensive civil code. The Missouri General Assembly adopted the Code of 1849, based on New York's Field Code, to modernize procedures and promote a more efficient system of justice. *See Mo.Laws 1848–49*, pp. 73–109 ("Practice in Courts of Justice"). The code eliminated archaic forms of "common law pleading," substituting instead a system of code pleading, or "fact pleading." The code required that the first pleading in a civil case contain a "statement of the facts constituting a cause of action ... in ordinary and concise language ... [and] in such a manner as to enable a person of common understanding to know what is intended." *Mo.Laws 1848–49*, art. VI, § 1, p. 79.

In 1943, prompted by the adoption of the Federal Rules of Civil Procedure, the legislature requested that this Court propose appropriate revisions to Missouri's civil code. With advice from The Missouri Bar, this Court submitted proposed revisions incorporating many of the federal rules. Atkinson, *Missouri's New Civil Procedure: A Critique of the Process of Procedural Improvement*, 9 Mo.L.Rev. 47, 48–52 (1944). Those recommendations included the adoption of the federal system of "notice pleading" and a summary judgment procedure substantially similar to Federal Rule 56. *Id.* at 58–59, 62–63; Henry, *Proposed Code of Civil Procedure*, 7 Mo. L.Rev. 1, 13–18 (1942). Despite adopting the substance of many of the federal rules, the legislature chose to retain Missouri's "fact pleading" approach and deleted from the code revisions providing for summary judgment. *See §§ 506.010, et seq., RSMo 1986* ("The Civil Code of Missouri"); Atkinson, 9 Mo.L.Rev. at 62–63.

The 1943 Act granted this Court "the power to promulgate rules for all courts of the state" so long as the rules did not contravene statutes or modify existing substantive rights. *1943 Mo.L. 353, § 10.1.* In 1945, the voters of Missouri broadened this power and raised it to constitutional dimensions. Article V, Section 5 of the 1945 Constitution permits this Court to adopt rules governing the "practice, procedure and pleading" in our courts so long as they did not "change substantive rights, or the law relating to ... the right of trial by jury." This permits the court to adopt rules contrary to procedural statutes, which was not permitted by the 1943 act. In 1959, pursuant to this authority, this Court adopted Rule 74.04 to permit summary judgments. As we will show, however, application of this new rule here proceeded as though there were no difference between notice pleading and fact pleading. *See II, B, 3, infra.*

### 2. *The History of Rule 74.04*

Missouri's Rule 74.04 sets out a procedure for granting summary judgments in cases in which the movant can establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. From its inception, such a procedure has been regarded as "an extreme and drastic remedy and great care should be exercised in utilizing the procedure." *Cooper v. Finke*, 376 S.W.2d 225, 229 (Mo.1964). Skepticism continues to this day. *Ross v. AT & T Comm. Co.*, 836 S.W.2d 952, 954 (Mo.App.1992). At the foundation of this skepticism has been the suspicion that the procedure "borders on denial of due process in that it denies the opposing party his day in court." *Olson v. Auto Owners Ins. Co.*, 700 S.W.2d 882, 884 (Mo.App.1985). *Accord Miller v. United Security Ins. Co.*, 496 S.W.2d 871, 875 (Mo.App.1973); *Kroger Co. v. Roy Crosby Co.*, 393 S.W.2d 843, 844 (Mo.App. 1965).

To protect the rights of litigants, the rule as originally promulgated required the movant to establish his right to judgment as a matter of law by *"unassailable proof." Rule 74.04(h).* [Emphasis added.] This requirement, though not found in Federal Rule 56, was added merely to "make

clear that the procedure is not applicable where there is a factual issue to be determined by the court or jury." *Rule 74.04* (Committee Note—1959). On the strength of this safeguard, a summary judgment entered on a properly plead and supported motion does not deny due process. *Henkel v. City of Pevely*, 504 S.W.2d 141, 149 (Mo.App.1973).

In 1988, this Court amended Rule 74.04 to remove subsection (h) in its entirety. The rule now substantially tracks the language of the federal rule. No longer is a movant required to establish a right to judgment as a matter of law by "unassailable proof." However, the movant continues to bear the burden of establishing a legal right to judgment and the absence of any genuine issue as to any material fact required to support that right to judgment. *Rule 74.04(c)*.

Our courts have found a "genuine issue" whenever there is the "slightest doubt" as to a material fact. *Elliott*, 423 S.W.2d at 835. With the demise of the "unassailable proof" standard, however, the continued viability of the "slightest doubt" standard has been doubted. *See Martin v. City of Washington*, 848 S.W.2d 487, 492 (Mo. banc 1993) (citing with approval *Wood & Huston Bank v. Malan*, 815 S.W.2d 454, 457 (Mo.App.1991)). *But see Berneathy v. Pursley*, 832 S.W.2d 524, 525 (Mo.App. 1992) ("slightest doubt" standard applied).

Because the "slightest doubt" standard goes to the presence or absence of factual disputes rather than the movant's right to judgment, this requirement was not tied to the requirement of "unassailable proof." Therefore, it would be disingenuous to suppose that it was affected by the 1988 amendment to the rule. Nevertheless, our examination of the "slightest doubt" standard has persuaded us that it must be discarded. We abandon the "slightest doubt" standard, not because the summary judgment rule has changed with regard to the settling of factual disputes; it clearly has not. Rather, we now reject it because we do not believe that that standard, and

the way it has been applied, ensures compliance with the requirements of the rule.

In reviewing the "slightest doubt" standard, we have discerned that it has, from time to time, been employed in such a way as to rob summary judgment of any usefulness whatsoever. Recall that "slightest doubt" is intended to test for *"genuine* issues of material fact," not just "issues of material fact." "Genuine" implies that the issue, or dispute, must be a real and substantial one—one consisting not merely of conjecture, theory and possibilities. Too often, courts have confused "slightest doubt" with "slightest possibility." To the extent that trial and appellate courts are of the impression that the "slightest doubt" standard defeats summary judgment when *any* doubt exists, no matter how unreasonable, the standard was been misapplied and is now abandoned.

█ The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute. Summary judgment tests simply for the existence, not the extent, of these genuine disputes. Therefore, where the trial court, in order to grant summary judgment, must overlook material in the record that raises a genuine dispute as to the facts underlying the movant's right to judgment, summary judgment is not proper.

### 3. The Role of Federal Decisions

From the earliest days of summary judgment practice in Missouri, this Court has stated that "the federal decisions construing Rule 56 [of the Federal Rules of Civil Procedure] are particularly persuasive in applying the Missouri rule [74.04]." *Cooper*, 376 S.W.2d at 228. *See also Elliott*, 423 S.W.2d at 835. When *Cooper* and *Elliott* were decided, courts applied the federal rule and the Missouri rule nearly identically. Missouri rule language requiring "unassailable proof" did no more than acknowledge federal rules decisions on summary judgments to that effect. *Cooper*, 376 S.W.2d at 229. *See, e.g., Armco Steel Co. v. Realty Investment Co.*, 273 F.2d 483, 484–485 (8th Cir.1960) (summary judg-

ment not proper "except where [the movant] is entitled to its allowance *beyond all doubt;* only where the conceded facts establish [the movant's] right with such clarity as to have no room for controversy; with all reasonable doubts touching the existence of a genuine issue ... resolved against the movant"). [Emphasis added.]

Despite the apparent commonality of these summary judgment rules, however, the systems of federal pleading and Missouri pleading which underlie those rules proceed from antithetical philosophical bases. The modern Federal Rules of Civil Procedure are founded on "notice pleading" principles. A plaintiff need only plead sufficient information to enable the defendant to understand the claim being pursued. *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957). The federal rules assume that discovery will narrow and identify the issues for trial. *Hickman v. Taylor,* 329 U.S. 495, 500–501, 67 S.Ct. 385, 388–89, 91 L.Ed. 451 ("The new rules ... restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial").

Time has revealed, however, that the change to notice pleading in the federal system has produced a result in summary judgment practice incompatible with our fact-pleading regime. The United States Supreme Court has fashioned a new role for summary judgment as a by-product of its notice pleading system.

> Before the shift to "notice pleading" accomplished by the Federal Rules, motions to dismiss a complaint or to strike a defense were the principal tools by which factually insufficient claims or defenses could be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources. *But with the advent of "notice pleading," the motion to dismiss seldom fulfills this function any more, and its place has been taken by the motion for summary judgment.*

*Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). [Emphasis added.] This new role

for federal summary judgment was exhaustively articulated in what has come to be known as the *"Celotex* trilogy." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ Missouri is not a "notice pleading" state. Beginning with Article IV of the Civil Code of 1849, requiring that the petition contain a "plain and concise statement *of the facts* constituting a cause of action," [emphasis added], Missouri has remained a "fact pleading" state. Given a clear opportunity in 1942 to adopt the federal system of notice pleading, the General Assembly purposefully avoided this approach and, not coincidentally, any procedure permitting summary judgment. The Civil Code, as adopted, requires that the petition "contain a short and plain statement of the facts showing that the pleader is entitled to relief." § 509.050.1(1), RSMo Supp.1992; *Rule* 55.05(1). *Compare* Federal Rules of Civil Procedure 8(a)(2) (petition shall set forth a "short and plain statement of the claim"). Most recently, the Civil Rules Study Committee of this Court has completed its massive task of proposing revisions to our Civil Rules and did not propose any change to "notice pleading" for Missouri.

In Missouri, motions to dismiss for failure to state a claim have substantially more "bite" under our "fact pleading" rules than they have under the federal system of "notice pleading." *Compare Sofka v. Thal,* 662 S.W.2d 502, 509 (Mo. banc 1983) (where petition contains only conclusions and neither the ultimate facts nor any allegations from which to infer those facts, motion to dismiss is properly granted), *with Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957) (lack of specific facts does not invite dismissal so long as complaint "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"). As there is no need for our Rule 74.04 to fill in for an ineffectual motion to dismiss, the role of summary judgment in

Missouri differs significantly from that in current federal practice.

Where the federal courts now use *discovery* to identify the triable issues, *Conley*, 355 U.S. at 48 n. 9, 78 S.Ct. at 103 n. 9 such has always been the role of the *pleadings* in Missouri. Where the federal courts now use *discovery* to identify the facts upon which the plaintiff's claim rests, *id.; Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554–55 such has always been the role of *pleadings* in Missouri. Finally, where the federal courts rely on *summary judgment* procedures to dispose of baseless claims, *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53, such continues to be the role of *motions to dismiss* in Missouri. In sum, Missouri and federal summary judgment practice correspond only in language, not in function.

■ The purpose of summary judgment under Missouri's fact-pleading regime is to identify cases (1) in which there is no genuine dispute as to the facts and (2) the facts as admitted show a legal right to judgment for the movant. Because federal summary judgment serves a different purpose, it is difficult to view the federal cases construing the federal rule as "particularly" persuasive any longer; thirty years of experience within our own system of "fact pleading" is sufficient to define the scope of summary judgment under our Rule 74.04 and its role in our pretrial practice. Therefore, federal cases are to be considered no more, though certainly no less, persuasive than any other nonbinding authority in the determination of summary judgment motions which are, by their very nature, susceptible primarily of a case-by-case analysis.[1]

## C. Application of Rule 74.04

The language of Rule 74.04 establishes the boundaries of Missouri's summary judgment practice. The rule draws an initial, critical distinction. It divides movants into two classes: "claimants" and "defending parties." A claimant is one who "seeks to recover," without regard to whether recovery is sought by claim, counterclaim, cross-claim or declaratory judgment. *Rule 74.04(a)* A "defending party" is one against whom recovery is sought. *Rule 74.04(b)*. (These two classifications necessarily imply the presence of a third, a "mixed" class of motions, which we discuss where appropriate).

■ The rule then details the elements of a properly pleaded motion. First, the movant "shall state with particularity the grounds" for the motion. *Rule 74.04(c)*. Thus, the rule calls for a concise description, complete with references to the supporting portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," of the movant's claim of entitlement to "judgment as a matter of law." *Rule 74.04(c)*. Insofar as the movant's right to judgment as a matter of law depends upon the presence or absence of certain facts, the movant must also establish, by reference to the record when appropriate, that there is no genuine dispute about those material facts. This second showing is merely incidental to the first. The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question. *Cf. E.O. Dorsch Electric*, 413 S.W.2d at 173 (judgment improper, despite non-movant's failure to file counter-affidavits and create a material issue of fact, because movant had not established a right to judgment as a matter of law). *Accord Cure v. City of Jefferson*, 380 S.W.2d 305, 309–310 (Mo.1964).

■ At this stage of the analysis, the initial classification of movants is impor-

---

1. *Martin* cites the *Celotex* trilogy with approval, seeing "no compelling reason to alter the federal standard." *Martin*, 848 S.W.2d at 491. The opinion also raises some doubt as to the continued validity of the "slightest doubt" standard in determining the existence of a genuine issue of material fact. *Id.* at 492. Neither the reasoning of *Martin*, nor its holding, is contrary to any-

thing in this opinion. The *Martin* defendants established their right to judgment as a matter of law and the plaintiffs failed to supplement the record so as create a question of fact. *Id.* at 492. Indeed, the issues presented for the Court's analysis were strictly issues of law and, therefore, the case was one uniquely suited to summary judgment.

tant. A movant's right to judgment as a matter of law differs significantly depending upon whether that movant is a "claimant" or a "defending party." A "claimant" must establish that there is no genuine dispute as to those material facts upon which the "claimant" would have had the burden of persuasion at trial.

Additionally, where the defendant has raised an affirmative defense, a claimant's right to judgment depends just as much on the *non-viability* of that affirmative defense as it does on the *viability* of the claimant's claim. It does not matter that the non-movant will bear the burden on this issue at trial. Summary judgment permits the "claimant" to *avoid* trial; in order to do so, the claimant must meet the burden imposed by Rule 74.04(c) by showing a right to judgment as a matter of law. Therefore, a claimant moving for summary judgment in the face of an affirmative defense must also establish that the affirmative defense fails as a matter of law. Unlike the burden of establishing *all* of the facts necessary to his claim, however, the claimant may defeat an affirmative defense by establishing that *any one* of the facts necessary to support the defense is absent. At this stage of the proceeding, the analysis centers on Rule 74.04(c); it is irrelevant what the non-movant has or has not said or done.

The prima facie showing required by Rule 74.04(c) is necessarily different where the movant is a "defending party." Where a "defending party" will not bear the burden of persuasion at trial, that party need not controvert *each* element of the non-movant's claim in order to establish a right to summary judgment. Rather, a "defending party" may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact

to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense. Regardless of which of these three means is employed by the "defending party," each establishes a right to judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper.

When, and only when, the movant has made the prima facie showing required by Rule 74.04(c), Rule 74.04(e) places burdens on the non-movant. "When a motion for summary judgment is made and supported as provided in this Rule 74.04," i.e., when the movant makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his *response,* by affidavits or as otherwise provided in this Rule 74.04, *shall set forth specific facts* showing that there is a genuine issue for trial." Rule 74.04(e). [Emphasis added.]

Thus, once a movant has met the burden imposed by Rule 74.04(c) by establishing a right to judgment as a matter of law, the non-movant's *only* recourse is to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed. If the non-movant cannot contradict the showing of the movant, judgment is properly entered against the non-movant because the movant has already established a right to judgment as a matter of law.[2] The showing required of the non-movant in the face of a properly pleaded summary judgment motion does not change depending upon whether the non-movant is a "claimant" or "defending party." The non-movant never needs to establish a right to judgment as a

---

**2.** The last sentence of Rule 74.04(e) to the effect that summary judgment will be entered for the movant and against a non-movant who has failed to make the requisite response only "if appropriate," merely makes plain that the movant must have first established his right to judgment as a matter of law.

matter of law; the non-movant need only show that there is a genuine dispute as to the facts underlying the *movant's* right to judgment. For purposes of Rule 74.04, a "genuine issue" exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. A "genuine issue" is a dispute that is real, not merely argumentative, imaginary or frivolous. Where the "genuine issues" raised by the non-movant are merely argumentative, imaginary or frivolous, summary judgment is proper.

▬▬▬ The well-worn phrases forming the basis of the standard of review now begin to take shape as useful methods for the trial or appellate court to evaluate summary judgment motions. The adage that the record is viewed "in the light most favorable to the non-movant" means that the movant bears the burden of establishing a right to judgment as a matter of law on the record as submitted; any evidence in the record that presents a genuine dispute as to the material facts defeats the movant's prima facie showing. Similarly, the rule that the non-movant is "given the benefit of all reasonable inferences" means that if the movant requires an inference to establish his right to judgment as a matter of law, and the evidence reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists and the movant's prima facie showing fails. Finally, the phrase "all facts that are not contradicted are taken as true" means, first, that the movant must establish that the material facts are not in genuine dispute; materials submitted by the movant that are, themselves, inconsistent on the material facts defeat the movant's prima facie showing. Second, if there is no contradiction and the movant has shown a right to judgment as a matter of law, the non-movant must *create* a genuine dispute by supplementing the record with competent materials that establish a plausible, but contradictory, version of at least one of the movant's essential facts. Therefore, it is not the "truth" of the facts upon which the court focuses, but whether those facts are disputed. Where they are not,

the facts are admitted for purposes of analyzing a summary judgment motion.

## D. Movant's Prima Facie Showing Under Rule 74.04(c)

We now apply these principles. The summary judgment motions by ITT and Mercantile in this case present both "claimant" and "defending party" motions. Each plaintiff moved for judgment on its claims, i.e., as "claimants," and each plaintiff moved for judgment against Evert's counterclaims, i.e., as "defending parties." Analytically, even the plaintiffs' "claimant" motions are "mixed" claimant/defending party motions because they cannot succeed unless they establish beyond the slightest doubt *all* of the elements of their claims AND the absence of *at least one* element of each of Evert's properly-raised affirmative defenses and counterclaims.

### 1. *Elements of Plaintiffs' Cases*

▬▬▬ To recover on a contract of guaranty, the creditor must show (1) that the defendant executed the guaranty, (2) that the defendant unconditionally delivered the guaranty to the creditor, (3) that the creditor, in reliance on the guaranty, thereafter extended credit to the debtor, and (4) that there is currently due and owing some sum of money from the debtor to the creditor that the guaranty purports to cover. *Linwood State Bank v. Lientz,* 413 S.W.2d 248, 256 (Mo.1967).

Evert admits signing the May 20, 1987 guaranty to ITT and the January, 1986 guaranty to Mercantile. ITT and Mercantile supported their motion with Evert's deposition containing these admissions and with affidavits of their officers to the same effect. These same sources establish unconditional delivery of the guaranties.

Through the affidavits of their officers, ITT and Mercantile have shown that they extended credit to Mid–America after the date of each of these guaranties and that they did so in reliance upon Evert's guaranty. Additionally, Evert's deposition testimony clearly shows that he understood that ITT and Mercantile intended to rely

upon his guaranty, and, if they did not execute them, they would extend no further credit to Mid–America.

Finally, ITT and Mercantile established the extent of the outstanding debt owed by Mid–America, including applicable interest and expenses. On our review of the record before us, we hold that ITT and Mercantile established that there is no genuine dispute as to the four elements of their claims.

### 2. Affirmative Defenses

As noted above, however, where the nonmovant has properly pleaded an affirmative defense, a "claimant" seeking summary judgment must show more than the elements of its claim to establish a right to judgment as a matter of law; the "claimant" must also show, beyond any genuine dispute, the nonexistence of some fact essential to the affirmative defense put forward by the non-moving party or that the defense is legally insufficient.

Here, Evert included in his first amended answer to ITT's complaint the following language:

3. For further Answer, and by way of affirmative defense, Defendant Evert states that ITT is barred from any relief because it altered the instruments in question.

In his first amended answer to Mercantile's complaint, the following language appears:

3. For further Answer and by way of affirmative defense, Defendant Evert states that Plaintiff Mercantile is barred from any relief by estoppel, waiver, duress and failure of consideration.

Regarding the complaints of both Mercantile and ITT, Evert stated:

4. For further Answer, and by way of affirmative defense, Defendant Evert states that Plaintiffs jointly and severally failed to dispose of the collateral ... in a commercially reasonable manner and, therefore, are barred from recovery.

"An affirmative defense is asserted by the *pleading of additional facts* not necessary to support a plaintiff's case which serve to avoid the defendants' legal responsibility even though plaintiffs' [sic] allega-

tions are sustained by the evidence." *Reinecke v. Kleinheider*, 804 S.W.2d 838, 841 (Mo.App.1991). [Emphasis added.] Bare legal conclusions, such as those set forth by Evert, fail to inform the plaintiff of the facts relied on and, therefore, fail to further the purposes protected by Rule 55.08. *See Schimmel Fur Co. v. American Indemnity Co.*, 440 S.W.2d 932, 939 (Mo. 1969) (rule requires notice of facts relied on so that opposing parties may be prepared on those issues).

Shortly after the adoption of the 1849 Code, this Court held that "[l]oose as the present system of pleading under the practice act is, still the parties must *state the facts* constituting the cause of action and the defence." *Sybert v. Jones*, 19 Mo. 86, 88 (1853). Similarly, this Court noted, in *Northrup v. Mississippi Valley Ins. Co.*, 47 Mo. 435, 443 (1871), that the Civil Code requires a defendant to set forth in his answer "a statement of any new matter constituting a defense or counterclaim, in ordinary and concise language, without repetition." The Court went on to explain:

Where new matter is relied upon in defense or in evidence, it must be set out in the answer.... Under the old system, by pleading the general issue everything was open to proof which went to show a valid defense. But the practice act, which has substituted for the general issue an answer, and requires a statement of any new matter constituting a defense ... has worked a complete and total change in the principles of pleading. *If he intends to rely upon new matter which goes to defeat or avoid the plaintiff's action, he must set forth in clear and precise terms each substantive fact intended to be so relied on.*

*Id.* at 443–44. [Emphasis added.]

This principle, though enforcement is seldom sought, is still applicable today. Rule 55.07 requires that "[a] party shall state in short and plain terms his defenses to each claim." Rule 55.08 requires that "a party shall set forth affirmatively ... matter[s] constituting an avoidance or affirmative defense." Finally, Rule 55.11 requires that "[a]ll averments of claim or defense

... shall be limited as far as practicable to statement of a single set of circumstances." In the context of pleadings, "aver" means "to allege or assert positively." *Blacks Law Dictionary* 136 (6th ed. 1990). Thus, the rules contemplate that the factual basis for defenses be set out in the same manner as is required for pleading of claims.

We hold that Evert's affirmative defenses as set out above are insufficient as a matter of law. Requiring a "claimant" to negate such conclusory allegations as a prerequisite to summary judgment would require that party to first make the non-movant's case and then defeat it. Such is often the case under "notice pleading," but has been purposefully avoided by Missouri's historical adherence to "fact pleading."

Even were we to hold that Evert's allegations were sufficient to require ITT and Mercantile to negate them in their motion for summary judgment, we are convinced that the plaintiffs made a sufficient showing that Evert's asserted affirmative defenses did not preclude their right to judgment as a matter of law.

■ ITT points to portions of Evert's deposition in which Evert admits that there were no irregularities in his May 20, 1987 guaranty. Any alterations that Evert contends were made to either of his other two guaranties to ITT are immaterial in that his liability rests independently on any one of the three guaranties.

Similarly, Mercantile highlights portions of Evert's deposition in which he admitted that he could state no factual basis for his claim of estoppel. Evert's testimony shows that no one ever told him Mercantile would not seek to recover on his guaranty. His defense of estoppel and waiver, therefore, were no more than useful creations that he cannot prove.

■ Evert also stated that he executed the guaranty because he "did not want to see George cut off." Even if true, this does not constitute duress, *Middleton Enterprises, Inc. v. Churm*, 618 F.Supp. 477, 480 (E.D.Mo.1985), and, in fact, supports

the existence of consideration in this case. Despite the failure of a factual basis for Evert's claim of duress, the affidavits of Mercantile's officers establish that Evert did not sign under any legally significant duress. These affidavits further show ample consideration in that they state Evert's guaranty was an inducement to make the loan to Mid–America and Evert's testimony clearly shows that he understood and accepted this. Exasperated by Evert's "shotgun" defense approach, attorneys for Mercantile initiated the following colloquy during Evert's deposition:

Q. Do you have any claim against Mercantile that it is not entitled to the fifty thousand dollars?

A. Yes.

Q. Why do you claim that?

A. They did not watch George [Walker].

Q. In other words they [Mercantile] should have monitored George's operations more closely?

A. That was the deal.

Thus, Evert's deposition shows that Evert can produce no facts supporting the existence of estoppel, waiver, duress, or failure of consideration.

■ Finally, the motions of both ITT and Mercantile adequately negate Evert's affirmative defense that the plaintiffs disposed of the collateral in a commercially unreasonable manner. First, Evert failed to allege sufficient facts supporting this affirmative defense. Second, even if he had pleaded sufficient facts to support the affirmative defense, ITT and Mercantile have supported their motions with affidavits setting forth the facts showing that the disposition of collateral was commercially reasonable. In his deposition, attached to ITT and Mercantile's motion, Evert admits receiving the four notices of public and private sales of Mid–America's collateral and admits that the notices were sufficient. Evert states that his only complaint with the disposition of the collateral was that "[t]here is no reason in the world to sell brand new stuff at bargain prices." An insufficient price, in and of itself, is never sufficient to challenge a creditor's disposition of collateral. *Continental &*

*Commercial Nat'l Bank of Chicago v. Ricker*, 330 Mo. 75, 49 S.W.2d 20, 24 (1932); *Jefferson Bank & Trust Co.*, 599 S.W.2d 201, 204 (Mo.App.1980). Evert admits that he does not know the value of the collateral that was replevied and sold and, therefore, cannot even show the extent of the "bargain" he asserts. Therefore, ITT and Mercantile have shown that Evert cannot present evidence of a commercially unreasonable disposition.

▮▮ Additionally, where a guarantor seeks release from his obligation based on an inadequate sales price for collateral, the guarantor must show that the guarantee acted in bad faith. *Id.; Commerce Bank of St. Louis, N.A. v. Wright*, 645 S.W.2d 17, 22 (Mo.App.1982). ITT and Mercantile have demonstrated that Evert's pleadings are silent on this element, and his testimony confirms that Evert does not claim plaintiffs acted in bad faith.

▮▮ Finally, by the unambiguous language of the ITT guaranty and the Mercantile guaranty, Evert agreed to *primary* liability on Mid–America's debt. He agreed that neither ITT nor Mercantile would be required to pursue Mid–America's collateral before seeking payment from him and that ITT and Mercantile could release, abandon or otherwise dispose of any collateral without releasing Evert. Thus, Mercantile and ITT have established beyond any genuine dispute that Evert's affirmative defenses of commercial unreasonableness do not preclude their right to judgments as a matter of law.

For his last affirmative defense, Evert alleges that he was fraudulently induced to sign both the Mercantile and ITT guaranties. In response to ITT's claim, Evert answered as follows:

5. For further Answer, and by way of affirmative defense, Defendant Evert states that Plaintiff ITT, by and through its agents, fraudulently induced Defendant Evert to sign the guaranty he believes he signed, in that said agent represented to Defendant Evert that the guaranty was a *mere formality* for the reason that Plaintiff ITT was *fully protected* and secured by the collateral to be purchased with the proceeds of the loans and Plaintiff *ITT would make sure that all collateral was secure and all payments were made* on the loans. These representations were false and Plaintiff ITT knew they were false or were ignorant of their veracity. Further, these representations were made with the purpose that Defendant Evert rely on them, which he did, using ordinary care and with a right to rely thereon, the representations were material to Defendant Evert signing a guaranty directly causing Defendant Evert to enter in to the aforesaid guaranty. [Emphasis added.]

In response to Mercantile's claim, Evert answered as follows:

5. For further Answer, and by way of affirmative defense, Defendant Evert states that Plaintiff Mercantile, by and through its agents, fraudulently induced Defendant Evert to sign the guaranty he believes he signed, in that said agent represented [to] Defendant Evert [that] the Plaintiff Mercantile was *fully protected* and secured by the collateral in Defendant Mid–America's inventory and Plaintiff *Mercantile would make sure that all collateral was secure and all payments were made* on the loans. These representations were false and Plaintiff Mercantile knew they were false or were ignorant as to the [sic] their veracity. Further, these representations were made with the purpose that Defendant Evert rely on them, which he did, using ordinary care and with a right to rely thereon, the representations were material to Defendant Evert signing a guaranty directly causing Defendant Evert to enter in to the aforesaid guarantee [sic]. [Emphasis added.]

We assume, but do not decide, that these defenses were pleaded with the level of specificity required by Rule 55.08 and Rule 55.15. In them, Evert has set forth the facts he contends relieve him of his legal responsibilities on the guaranties he signed. To make the required prima facie showing required by Rule 74.04(c), ITT and Mercantile must demonstrate beyond any genuine dispute that one of the facts neces-

sary to Evert's defense is absent or that the sum of the facts alleged by Evert do not constitute a bar to their right to judgment as a matter of law.

■ To avoid liability at trial, Evert would have to prove each of the following: (1) that agents of ITT and Mercantile made certain material representations to Evert, (2) such representations were false when made, (3) the agents making the representations knew they were false, (4) the representations were made with the purpose of deceiving Evert, (5) Evert was, in fact, deceived, (6) Evert reasonably relied on the representations in signing the guaranties, and (7) Evert suffered damage as a proximate result of the fraudulent misrepresentations. *Jefferson Bank & Trust Company v. Horst*, 599 S.W.2d 201, 203; *Forsythe v. Starnes*, 554 S.W.2d 100, 110–11 (Mo. App.1977). As discussed in Section II, C, *supra*, ITT and Mercantile need not disprove each of these elements; they need only establish that one element is lacking.

ITT and Mercantile argue that Evert's admissions, coupled with the affidavits of their officers, show that no genuine dispute over the facts exists and, as a matter of law, any reliance Evert may have placed on the representations of their officers was unreasonable.

First, Evert was an experienced businessman and no stranger to contracts of guaranty. Second, the language of the contract is painfully clear; Evert stands primarily liable for the debts of Mid–America to ITT and Mercantile.

Third, Evert admits that plaintiffs' agents never told him that the plaintiffs would not pursue him under the guaranty should Mid–America default. Rather, Evert merely alleges that ITT and Mercantile said they were "fully protected" and that they would "make sure all the collateral was secure and the payments were made." The first representation concerns a fact that is immaterial to the question of whether Evert assumed the responsibilities of a guarantor inasmuch as the language of the guaranty makes him primarily liable notwithstanding the plaintiffs' ability to foreclose on collateral. The second statement is, at best, merely an expression of a present intent to influence future actions of someone not within the control of the plaintiffs. Neither statement purports to alter the nature of the agreement Evert was to sign. Indeed, Evert admits that no one told him he would not be called upon to honor his guaranty.

■ The heart of a contract for guaranty is that the signor has agreed to be liable principally for another's debt. Where a guarantor seeks to avoid liability due to representations of the guarantee, those representations must go to the nature of the guarantor's obligation under the guaranty in order to make reliance reasonable; representations concerning the debtor's obligation, and the strength or weakness of the creditor's position, are insufficient. *Cf. Colonial Bank v. Ratican*, 806 S.W.2d 460, 463 (Mo.App.1991).

■ We are convinced, as was the trial court, that the plaintiffs' motions adequately demonstrate the absence of any reasonable reliance by Evert. They have shown, on the basis of the record, that such a conclusion is beyond any genuine dispute. Therefore, Evert's affirmative defense of fraudulent inducement cannot be proved.

Having reviewed the plaintiffs' motion, we hold that ITT and Mercantile made a sufficient prima facie showing under Rule 74.04(c). The record they provided establishes their right to judgment as a matter of law, based on facts which are not genuinely disputed. First, they have demonstrated the undisputed existence of the facts supporting their claim. Second, they have shown that Evert failed to plead sufficient facts to raise his affirmative defenses of material alteration, estoppel, waiver, duress, failure of consideration and commercially unreasonable disposition of collateral. Further, they have shown that these affirmative defenses will not lie. Finally, the absence, as a matter of law, of reasonable reliance—an essential element of Evert's only properly pleaded affirmative defense, fraudulent inducement—establishes the movants' right to judgment.

### E. Non–Movant's Response Under Rule 74.04(e)

 The focus now shifts to Evert's response. Unless Evert successfully shows the existence of some genuine dispute as to one of the material facts necessary to the plaintiffs' right to recover, summary judgment against him is proper. *Rule 74.04(e)*. This showing must be made by way of an addition to the record in the form of affidavit, deposition, answer to interrogatory or admission. *Id.* To be certain, arguments that a question of fact exists on the basis of the documents supplied by the movant may be of some help to the court in determining whether the movant has made the prima facie showing required by Rule 74.04(c). Once the court is satisfied that the prima facie case is made, however, the mandate of Rule 74.04(e) is clear. The non-movant *must* supplement the record.

Evert filed his response, erroneously entitled "Suggestions in Opposition," and attached as exhibits his own affidavits and the affidavit of his handwriting expert. Evert's affidavits admit the execution of the January 24, 1986 guaranty to Mercantile and the May 20, 1987 guaranty to ITT. He also sets out the specific representations upon which he bases his fraudulent inducement defense and his counterclaim for fraud.

With respect to ITT, these representations were: (1) that ITT had "ninety percent (90%) buy backs [agreements] from the producers of the boats and other marine equipment," (2) that George Walker (Mid–America) would be required to put down the other ten percent plus any freight charges, (3) that ITT would "check the inventory" every month, (4) that ITT held all titles to the boats and other marine equipment, (5) that ITT "totally monitored" all of Mid–America's operation, and (6) that ITT's agent represented that "there would be no risk to me in executing said Guaranty and that signing was a mere formality."

With respect to Mercantile, Evert avers that the following representations were made: (1) that the $150,000 loan was secured by collateral worth twice that much, (2) that Mercantile was to monitor Mid–America to maintain collateral at twice the amount of the loan, and (3) that Mercantile "would see that Mid–America made its payments due on said note." He avers that he entered into the contracts in reliance on these two sets of representations, but does not aver that any of these statements were false when made or when, if ever, they became false.

As we stated previously, representations that go solely to the debtor's obligation and the creditor's secured position cannot be reasonably relied upon by a guarantor in the face of the unambiguous language of his contract by which he assumed primary liability. All of Evert's statements of Mercantile's representations are of this quality and do not challenge Mercantile's right to judgment as a matter of law. Therefore, we hold that Evert has failed to contradict any fact necessary to Mercantile's right to judgment and summary judgment in favor of Mercantile on its claim against Evert is proper on the basis of the record before us.

 Evert's statement as to the sixth representation by ITT, however, is of an entirely different nature. There, ITT is alleged to have represented to Evert that he had "no risk" under the guaranty. This representation, if made, could form the basis for reasonable reliance. The statement is sufficiently within Evert's pleadings to be admissible and, when admitted, would present a jury question as to whether it was false at the time it was made, known to be false, made with the intent to deceive, and reasonably relied upon by Evert. Having supplemented the record, Evert has created a question of fact on the issue of reasonable reliance where none had appeared solely in light of that information filed by ITT with its motion. Therefore, we hold that Evert has successfully carried his burden under Rule 74.04(e) and that summary judgment in favor of ITT on the basis of the May 20, 1987 guaranty is not proper on this record.

### F. Alternative Basis for ITT's Summary Judgment

 Because our review is *de novo,* the trial court's order may be affirmed in

this Court on an entirely different basis than that posited at trial. *Cf. Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 243–44 (Mo. banc 1984) (summary judgment affirmed on alternative theory). Our review of the record in this case shows that summary judgment in favor of ITT was proper without regard to the genuine issue of fact arising out of Evert's affirmative defense to the May 20, 1987 guaranty. As previously noted, Evert executed *three* guaranties in favor of ITT. Any one of the three guaranties, if valid, would support the full measure of liability that ITT seeks. ITT's *motion* shows beyond any genuine dispute that the second guaranty, executed January 28, 1986, is valid and enforceable. Moreover, Evert's response fails to create any genuine issue of fact about validity or enforceability as to that guaranty.

ITT attached to its petition copies of three separate, but identical, guaranties bearing Evert's signature. These contracts bore dates of January 24 and 26, 1986, and May 20, 1987. Evert's first amended answer raised the affirmative defense that ITT has "altered the instruments in question." As discussed in section II, D, 2, *supra*, this claim is insufficient to raise an affirmative defense; Evert does not provide factual averments showing which instruments were altered or the nature of the claimed alterations. In his deposition, attached to ITT's motion, Evert asserts that the signature of "Donna Evert," his wife from whom he was separated at the time he executed the guaranties, had been added after he had signed. The implication is that her signature had been forged. This is immaterial, however, in that Evert, alone, is being sued on the guaranty and the validity of his former wife's signature is of no moment in establishing his personal liability. Therefore, even assuming that Evert's affirmative defense had been sufficiently pleaded, which it is not, ITT has shown that Evert's affirmative defense will fail as a matter of law when the January 28, 1986 guaranty is taken as the basis of liability.

The second defense, commercially unreasonable disposition of collateral, has also been held insufficient as a matter of law in section II, D, 2, *supra*. Evert's final affirmative defense, fraudulent inducement, is limited by its own terms to the May 20, 1987 guaranty. Therefore, ITT has shown the facts necessary to support its right to judgment as a matter of law on the January 28, 1986 guaranty.

Evert admitted in his deposition, offered as part of ITT's motion, that the signature on the January 28 guaranty "appears to be my signature." Evert's affidavit, filed in response to ITT's summary judgment motion, denies signing the January 24 guaranty, admits signing the May 20, 1987 guaranty, but is silent on the genuineness of the January 28 guaranty. Moreover, the affidavit of Evert's handwriting expert, used to show that the signature on the January 24 guaranty is not genuine, shows that Evert's signature on the January 28 guaranty was genuine because it was offered as an exemplar of Evert's genuine signature.

In an effort to avoid these admissions, Evert points to his deposition testimony, filed with ITT's motion, in which he states that he did not believe the signature on the January 28 guaranty was his because it was only four days after the first guaranty and that he did not believe he would duplicate such an undertaking. This testimony is unintelligible in light of the fact that Evert flatly denies having signed the earlier guaranty and, therefore, there would have been no duplication so far as he knew. In any event, a party may not avoid summary judgment by giving inconsistent testimony and then offering the inconsistencies into the record in order to demonstrate a genuine issue of material fact.

Here, Evert holds the January 28 signature forth as valid by using it as the partial basis of his expert's opinion that the January 24 signature is a forgery. He cannot then point to deposition testimony in which he "doubts" that the January 28 signature is his and call it a "genuine issue" of fact. Therefore, we hold that the only relevant material submitted by Evert in response to ITT's motion for summary judgment, the handwriting expert's affida-

vit, does not create a fact question as to the authenticity of the January 28 guaranty and, in fact, serves as further proof that that guaranty was genuine.

 Additionally, we note that Rule 55.23 provides that where a party's claim or defense depends on a written instrument and that party has attached a copy of the instrument to its pleading, "the execution of such instrument *shall be deemed confessed* unless the party charged to have executed the same shall *specifically deny* the execution thereof." Evert did not specifically deny the execution of any of the guaranties in either his original or his amended answer. "It is the sense of [Rule 55.23] that the answering defendant must clearly state its position if an issue of authenticity of a document attached to the petition is intended to be raised." *Lutsky v. Blue Cross Hosp. Service, Inc.*, 695 S.W.2d 870, 872 (Mo. banc 1985). Therefore, the validity of Evert's signatures, at least with respect to the January 28, 1986 guaranty is deemed confessed and cannot be challenged by way of response to a properly supported summary judgment motion.

We hold, therefore, with regard to ITT's motion for summary judgment on its petition, that ITT has shown, beyond any genuine dispute, facts that support its right to judgment based on either the January 28, 1986 guaranty or the May 20, 1987 guaranty. Evert's response, while it creates a genuine issue of fact as to the validity of the May 20, 1987 guaranty, fails to contradict any fact necessary to ITT's right to judgment on the January 28, 1986 guaranty. Accordingly, we hold that, on the basis of the record before us, summary judgment is properly granted in favor of ITT.

**G. Summary Judgment on Evert's Counterclaims**

Evert, in his amended answer, raises counterclaims against ITT[3] and Mercantile claiming that their agents' misrepresentations had fraudulently induced him to sign the guaranties.

A counterclaim, authorized by Rule 55.-01, "has the nature and effect of an independent action by the defendant against the plaintiff." *Buchweiser v. Estate of Laberer*, 695 S.W.2d 125, 129 (Mo. banc 1985). "Nothing is a counterclaim which is not a cause of action or a cross demand, and that does not contain the substance necessary to sustain an action by defendant against the plaintiff, if the plaintiff had not sued the defendant." *McPherson v. Meek*, 30 Mo. 245 (1860). "A cause of action which wholly defeats the demand of the plaintiff cannot be a counterclaim." *James v. Moore*, 42 Mo. 413 (1868).

Evert's counterclaims of fraudulent inducement are nothing more than his affirmative defenses restated. In his counterclaims, he alleges damages in the form of litigation expenses, damage to his credit rating and increased interest charged by creditors. We need not decide whether Evert would be entitled to these types of consequential damages had he been successful in defending plaintiffs' suit on the guaranties. Because we affirm the summary judgments in favor of ITT and Mercantile on the guaranties, that disposition necessarily disposes of Evert's counterclaims. Therefore, we affirm the summary judgments granted to ITT and Mercantile on Evert's counterclaims. *See* Rule 55.08.[4]

### III.

The judgment of the trial court is affirmed in all respects.

---

3. We need not consider Evert's counterclaim against ITT as that counterclaim seeks damages for having been fraudulently induced to sign the May 20, 1987 guaranty. Inasmuch as we have held that the basis of Evert's liability to ITT is the January 28 guaranty, any fraud with regard to the 1987 guaranty was inconsequential, could not have damaged Evert and, therefore, is not actionable.

4. "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court shall treat the pleadings as if there had been a proper designation." Rule 55.08.

COVINGTON, HOLSTEIN, BENTON, THOMAS and LIMBAUGH, JJ., and PREWITT, Special Judge, concur.

PRICE, J., not sitting.