AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Plaintiff–Respondent,

v.

Karen G. DAVIS, Defendant,

and

James E. Reynolds, Defendant–Appellant.

No. 19129.

Missouri Court of Appeals, Southern District, Division Two.

June 14, 1994.

W. Keith Currie, Pelts, Stokley & Turnbow, Hayti, for appellant.

John L. Oliver, Jr., Oliver, Oliver & Waltz, P.C., Cape Girardeau, for respondent.

CROW, Judge.

On June 7, 1989, Karen G. Davis was involved in an accident while driving a Thunderbird automobile owned by her husband's employer, Littrell Ford–Lincoln–Mercury, Inc., ("Littrell"). James E. Reynolds claimed he was injured in the accident.

American Casualty Company of Reading, Pennsylvania, ("American Casualty") brought this action seeking a judgment declaring that an insurance policy issued by it to Littrell provided no coverage for Karen Davis regarding the accident. Upon motion by American Casualty for summary judgment, the trial court entered judgment declaring that American Casualty "has no liability to Karen G. Davis nor to James E. Reynolds" regarding the accident. Reynolds, alone, appeals.

In considering an appeal from a summary judgment, an appellate court reviews the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376[1] (Mo. banc 1993). Facts set forth by affidavit or otherwise in support of a party's motion for summary judgment are taken as true unless contradicted by the non-moving party's response to the motion. *Id.* at 376[2]. We accord the non-movant the benefit of all reasonable inferences from the record. *Id.* at 376[3].

So viewed, the record establishes that Michael Thomas Davis, husband of Karen Davis, began working for Littrell in August, 1983. On the accident date, Michael was a sales representative for Littrell. Michael was furnished a "demonstrator" automobile by Littrell for business use and for use by customers of Littrell.

Michael and Karen owned a personal automobile—a Cougar they had bought from Littrell. It was "titled jointly."

On the accident date, Karen wanted the Cougar serviced. In her deposition, she explained: "I was going to be out of town, three hundred miles away, for three and a half weeks and I wanted the car in very tip-top shape while I was on my own."

Because Karen had a full-time job, she was reluctant to drive the Cougar to Littrell and wait for it to be serviced. Consequently, Michael drove the Cougar to Littrell for servicing on the accident date, leaving his demonstrator (the Thunderbird mentioned in the first sentence of this opinion) with Karen. She was driving it when the accident occurred.

The insurance policy issued by American Casualty to Littrell read, in pertinent part:

"**WHO IS AN INSURED.**

1. **For Covered Autos.**

   a. . . . .

   b. Anyone else is an **insured** while using with **your** permission a covered **auto** except:

   (1) . . . .

   (2) . . . .

   (3) **Your** customers, if **your** business is shown in ITEM ONE of the declarations as an **auto** dealership. However, if a customer of **yours**:

   (a) Has no other available insurance (whether primary, excess or contingent), he or she is an **insured** but only up to the compulsory or financial responsibility law limits where the covered **auto** is principally garaged.

   (b) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered **auto** is principally garaged, he or she is an **insured** only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her other insurance."

On the accident date, Karen Davis was covered by a policy of automobile liability insurance issued by "State Farm Insurance Company." The limits of coverage were "$50,000 for any one person and $100,000 for any one accident or occurrence." That coverage exceeded the requirements of The Motor Vehicle Financial Responsibility Law ("FRL"), §§ 303.010–.370, RSMo 1986 (effective July 1, 1987).

American Casualty based its motion for summary judgment on the premise that at the time of the accident, Karen was driving the Thunderbird as a customer of Littrell inasmuch as her Cougar was being serviced there. Emphasizing that the coverage provided Karen by her State Farm policy exceeded the requirements of the FRL, American Casualty asserted Karen was not an insured within the meaning of that term in provision 1.b.(3) of its policy, quoted above.

Reynolds filed nothing in response to American Casualty's motion for summary judgment.

■ The sole point relied on in Reynolds' brief asserts the trial court erroneously granted summary judgment "because there was a genuine issue as to a material fact in that the evidence reasonably supports the inference that [Karen Davis] was not a 'customer' of Littrell ... on the date of the accident."

The evidence pertinent to whether Karen was a customer of Littrell at the time of the accident appears in the depositions of Karen and her husband, Michael.

Michael testified:

"Q ... you took [the Cougar] in to be serviced on the day of the accident, that's correct?

A Yes, sir.

Q Were you all, were you billed for that service?

A Yes, sir.

Q You didn't get any kind of, that wasn't a part of your benefit as being an employee they didn't give you free service you had to pay for it maybe at a discounted rate or something?

A I paid for it just like every other customer.

Q Okay.

A I was a customer of Littrell Ford."

Reynolds argues Michael's testimony creates the inference that he, not Karen, was Littrell's customer at the time of the accident.

Michael also testified there had been two or three occasions during his six years at Littrell when he had requested, and received, permission for Karen to use a demonstrator when their family car was not being serviced. Karen recalled one such instance and conceded there may have been a few others.

Reynolds cites this passage from *ITT Commercial Finance:*

"[T]he rule that the non-movant is 'given the benefit of all reasonable inferences' means that if the movant requires an inference to establish his right to judgment as a matter of law, and the evidence reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists and the movant's prima facie showing fails."

854 S.W.2d at 382[20].

Reynolds maintains there are at least four reasonable conclusions that can be drawn from the record: (1) Karen was a customer of Littrell, (2) both Karen and Michael were customers of Littrell, (3) Michael was a customer of Littrell but Karen was not, and (4) Karen was not a customer of Littrell, but was allowed to use the Thunderbird because Michael was an employee of Littrell. Therefore, says Reynolds, a genuine dispute exists and American Casualty was not entitled to summary judgment.

We shall discuss, seriatim, the four inferences which, according to Reynolds, are reasonably supported by the record.

We agree with Reynolds that the record reasonably supports inference 1. That inference entitles American Casualty to summary judgment. Reynolds does not argue otherwise.

We agree with Reynolds that the record also reasonably supports inference 2. As American Casualty points out, inference 2 does not change the result. The case hinges on whether Karen was a customer—she was driving the Thunderbird. So long as she was a customer, it is immaterial whether Michael was also a customer.

We disagree with Reynolds on inference 3. The only reasonable inference supported by the record is that Karen Davis would have been driving the Cougar on the accident date but for the need to have it serviced. Because of her job, she did not want to drive the

Cougar to Littrell and wait for it to be serviced. That would have caused her to be absent from work.

Such a situation is precisely the reason Littrell provided demonstrator automobiles for use by its customers. Michael Davis testified:

"Q ... when you say customers of Littrell ... I believe ... you had referred to people who had purchased automobiles from Littrell ... is that what you're referring to when you say customers?

A Yes, sir."

As we have seen, Michael and Karen purchased the Cougar from Littrell. The only reasonable inference is that on the accident date, Karen was a customer of Littrell and, in that capacity, was driving the demonstrator Thunderbird provided by Littrell to its sales representative, Michael, who (as American Casualty points out) happened to be Karen's husband. Karen was driving the Thunderbird only because she was without the Cougar while it was being serviced. Although the record reasonably supports an inference that Michael was also a customer (the Cougar was jointly owned by him and Karen, and one can infer he paid the bill), the record does not reasonably support an inference that Karen was not a customer.

We also disagree with Reynolds on inference 4. Michael Davis testified that Littrell's policy regarding use of demonstrators by non-employees was that demonstrators were "strictly for customer use." On the few occasions when Karen used a demonstrator when their family car was not being serviced, Michael requested, and received, permission from Littrell's new car sales manager.

As noted earlier, Reynolds filed nothing contradicting Michael's and Karen's deposition testimony. Therefore, there is nothing in the record to support an inference that Karen was allowed to use the Thunderbird on the accident date merely because Michael was a Littrell employee.

In sum, the documentation supplied the trial court by American Casualty in support of its motion for summary judgment established facts demonstrating American Casualty had a right to judgment in its favor as a matter of law. It thereupon became incumbent on Reynolds to:

"... *create* a genuine dispute by supplementing the record with competent materials that establish a plausible, but contradictory, version of at least one of the movant's essential facts."

*ITT Commercial Finance*, 854 S.W.2d at 382[21] (emphasis in original).

Because Reynolds did not contradict any fact essential to American Casualty's right to judgment in its favor as a matter of law, the trial court correctly entered the judgment sought by American Casualty. *ITT Commercial Finance*, 854 S.W.2d at 381[17].

Judgment affirmed.

FLANIGAN, P.J., and GARRISON, J., concur.