**CALLAWAY COMMUNITY HOSPITAL ASSOCIATION, Appellant,**

v.

**MISSOURI DEPARTMENT OF CORRECTIONS,**
**Respondent.**

**No. WD 49160.**

Missouri Court of Appeals,
Western District.

Aug. 30, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1994.

Application to Transfer Denied
Nov. 22, 1994.

Thomas M. Dunlap, Fulton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gregory J. Scott, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and SPINDEN, JJ.

FENNER, Chief Judge.

Appellant, Callaway Community Hospital Association (Callaway), appeals the order of summary judgment entered by the Circuit Court of Cole County, Missouri, in favor of respondent, Missouri Department of Corrections (Department).

Pursuant to section 217.230, RSMo Supp. 1993, the Department is required to arrange for necessary health care services for inmates confined in its correctional facilities. Section 217.230, RSMo Supp.1993, provides as follows:

> The director shall appoint physicians and other health care personnel and shall arrange for necessary health care services for offenders confined in correctional facilities through the establishment and maintenance of the sections of mental health services and medical services, maintenance of infirmaries, and the procurement of hospital and other outside health care services through contractual arrangements.

From 1987 through December 31, 1990, Callaway furnished hospital services to the Department pursuant to a written contract and written extensions thereto. The services were offered at a discounted rate. The contract expired on December 31, 1990. No written extension was tendered and no extension was agreed upon between January 1, 1991 and June 6, 1991. Callaway, however, continued to provide services to inmates at

the Missouri Department of Corrections from January 1, 1991 through June 6, 1991. Callaway alleged that it told the Department that until there was a new contract, Callaway would be willing to provide services to the Department but that the charges for these services would be at the same rate charged to the public generally.

The dispute centers around money allegedly owed by the Department to Callaway for hospital services that Callaway furnished to the Department from January 1, 1991 through June 6, 1991. The hospital bill allegedly totalled $1,110,604.73 and the Department paid $888,483.79. Thus, Callaway claims that the Department still owes $222,120.94.

Callaway filed a petition in the Circuit Court of Cole County, Missouri, on February 18, 1992. Callaway filed its petition in three alternative counts: (1) quantum meruit; (2) action on account; and (3) breach of contract. In its petition, Callaway alleged that the Department has failed to pay Callaway the balance of $222,120.94 for the hospital services Callaway furnished from January 1, 1991 through June 6, 1991. Callaway alleged that the parties entered into an agreement for the period of January 1, 1991 through June 6, 1991 whereby Callaway agreed to provide hospital services to the Department and the Department agreed to pay Callaway for the services at the rate charged by Callaway to the public generally. Callaway asked the court to enter judgment in its favor for $222,120.94 plus interest.

In its answer to Callaway's petition, the Department asserted, in part, the following defenses: (1) failure to state a cause of action, (2) the action is barred by the doctrine of sovereign immunity, (3) failure of consideration in that the amounts claimed to be owed to Callaway "are unreasonable and excessive from those amounts previously and currently charged [the Department] for hospital services provided by [Callaway]," (4) during the time period at issue, it "implicitly exercised its option and renewed the previous contract between the parties," (5) an "implied contract" existed between the parties, and (6) the alleged agreement referred to by Callaway in its petition is illegal because it violates the provisions of Chapter 34, RSMo. The Department asked the court to dismiss the case.

The court, by agreement of the parties, treated the Department's Motion to Dismiss as a Motion for Summary Judgment, and considered the exhibits that Callaway had submitted with its Response to the Department's Motion to Dismiss as suggestions in opposition to summary judgment. On February 17, 1994, the court granted summary judgment in favor of the Department. This appeal followed.

■ On appeal, Callaway argues that the circuit court erred in granting summary judgment in favor of the Department because the Department did not have an undisputed right to judgment as a matter of law in that there existed "material facts [that] reveal[ed] genuine issues for trial, and, in fact, support recovery by [Callaway] against [the Department]."

Callaway's argument on appeal focuses on the emergency condition exception to the bidding requirements set forth in Chapter 34, RSMo. Callaway asserts that the Department obtained hospital services from Callaway and Callaway provided such services in a lawful manner pursuant to Purchasing Directive 71 (PD71) as an "emergency procurement." Callaway cites to section 34.100, RSMo 1986, and PD71–4000 in support of its argument that the Department directly purchased health care services from Callaway, without bidding, to satisfy an emergency condition.

As stated above, the court, by agreement of the parties, treated the Department's Motion to Dismiss as a Motion for Summary Judgment and considered exhibits that Callaway had submitted with its Response to the Department's Motion to Dismiss as suggestions in opposition to summary judgment.

■ When considering appeals from summary judgments, this court will review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Facts set forth by affidavit or otherwise in support of a party's

motion are taken as true unless contradicted by the nonmoving party's response to the summary judgment motion. *Id.* The nonmovant is accorded the benefit of all reasonable inferences from the record. *Id.*

■■ The propriety of summary judgment is purely an issue of law, and our review is essentially de novo. *Id.* The movant bears the burden of establishing a right to judgment as a matter of law and the absence of any genuine issue as to any material fact required to support that right to judgment. *Id.* at 378; Rule 74.04(c). Thus, the burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute. *ITT Commercial Finance Corp.*, 854 S.W.2d at 378.

■ When a motion for summary judgment is made, the adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise supported by rule, must set forth the specific facts showing that a genuine issue of fact does exist, not that it might exist. *Cavin v. Kasser*, 820 S.W.2d 647, 649 (Mo.App.1991).

Chapter 34, RSMo, also known as the State Purchasing Law, sets forth bidding requirements for state purchases. Section 34.150, RSMo 1986, provides, in pertinent part, as follows:

Whenever any department or agency of the state government shall purchase or contract for any supplies, materials, equipment or contractual services contrary to the provisions of this chapter or the rules and regulations made thereunder, *such order or contract shall be void and of no effect* (emphasis added).

Section 34.100, RSMo 1986, provides as follows:

1. The commissioner of administration shall have power to authorize any department to purchase direct any supplies which in his judgment can best be purchased direct by such department. *He shall prescribe rules under which such direct purchases shall be made;* provided, however, that all such direct purchases shall be based upon competitive bids as otherwise required by this chapter. The commissioner in promulgating such rules may establish a procedure for a waiver of competitive bids where the bids received are not acceptable or where a minimum number of bids was not received and may allow for rebidding. The rules also may provide for a waiver of the bid procedure and may allow departments to negotiate the pruchase [sic] of services for patients, residents, or clients with funds appropriated for this purpose (emphasis added).[1]

PD71 was adopted as such a rule, permitting a state agency to purchase health care services directly, without bidding, to satisfy an emergency condition.

While Callaway failed to plead the emergency exception in its petition, it relied on this exception in its Response to the Department's Motion to Dismiss (presumably to refute the Department's contention, in its answer to Callaway's petition, that the alleged agreement referred to in Count III of Callaway's petition "is illegal since it violates the provisions of Chapter 34, RSMo."), and it submitted exhibits to support its contention that health care services were purchased to satisfy an emergency condition. Callaway's exhibits, however, failed to establish the existence of an emergency condition for the purchases from January 1, 1991 through June 6, 1991, and the trial court was correct in granting summary judgment in favor of the Department.

■■ Under PD71–4000.1, an emergency condition is defined as "a situation which creates a serious and obvious threat to public health, welfare or safety, or creates a serious and obvious threat to the operation of state government in executing its legal responsibilities to the public and/or for the persons ... in its legal care, custody or control as may

1. Under section 34.010.4, RSMo 1986, "supplies" is defined as "supplies, materials, equipment, contractual services and any and all articles or things, except as in this chapter otherwise provided." Section 34.030, RSMo 1986, provides that "[t]he commissioner of administration shall purchase all supplies for all departments of the state, except as in this chapter otherwise provided."

arise by reason of ... illness, ... accident, ... and similar causes." Under PD71–4000.2, to qualify as an emergency procurement, an emergency condition, as defined in PD71–4000.1, must exist and create an immediate and serious need for services which cannot be satisfied through normal procurement methods due to the element of time. A situation shall not warrant an emergency purchase unless (1) an emergency condition exists, (2) the element of time is a crucial factor in seeking relief, and (3) the resolution of the condition receives priority over routine operations and duties of the state agency.

None of Callaway's exhibits shows that the Department purchased health care services to satisfy an emergency condition. Callaway argues that the "Ambler Memorandum" (Exhibit "H") was designed to bring the action of the Department into substantial compliance with PD71 and showed that the Department "was in an administrative emergency regarding providing health care to its inmates." Callaway contends that "[i]t is reasonable to infer from the actions and words of the Defendant that bidding and prior approval for such hospital services were not considered by the Defendant to be possible by reason of the element of time and the emergency condition."

The "Ambler Memorandum" is from John Ambler, Business Manager of the Department's Division of Classification and Treatment, to Don Fishback, Procurement Officer, and is a "Letter of Clarification—Necessary Services" regarding Callaway Community Hospital Payables. The memorandum states:

> Pursuant to all subject issues, be advised that invoices processed through our office during FY91, reflect services provided by the referenced contractor. Those services were considered by Dr. Robert L. Schoenen, II, D.O., (in concert with recommendations of institutional physicians and contract physicians alike), to be necessary and essential for the welfare of incarcerated offenders under his direct care. Combined opinions, otherwise removed from the invoices prior to processing, clearly indicate that circumstances existed whereby failure to provide treatment could have had long

term adverse effects on the individuals' health condition.

This memorandum does not establish an emergency procurement pursuant to PD71–4000. At best, it serves to show that the health care services were "necessary" under section 217.230, RSMo Supp. 1993.

The Department was entitled to judgment as a matter of law, in that Callaway failed to state a cause of action. We affirm the trial court's granting of summary judgment in favor of the Department.

All concur.