**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of The Merchants Bank, Plaintiff,**

v.

**MEDMARK, INC., et al., Defendants.**

**No. 94–2394–KHV.**

United States District Court,
D. Kansas.

Aug. 7, 1995.

Order Supplementing Decision
Aug. 10, 1995.

**508**

John M. McFarland, Gage & Tucker, Overland Park, KS, and Major W. Park, Jr., Terry J. Brady, and Janet L. Chleborad, Gage & Tucker, Kansas City, MO, for plaintiff.

Don R. Lolli, Michael S. Crowe, and Steven D. Lance, Beckett, Lolli, Bartunek & Beckett, Kansas City, MO, for defendants.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

This action comes before the Court on *Plaintiff's Motion for Summary Judgment as to Defendant Medical Industries Management, Inc.* (Doc. # 73), *Plaintiff's Motion for Summary Judgment as to Defendant Medmark, Inc.* (Doc. # 75), *Plaintiff's Motion for Summary Judgment as to Defendant Edgar Ellyson* (Doc. # 77), *Plaintiff's Motion for Summary Judgment as to Defendant Mary Sue Shalberg* (Doc. # 79), and *Plaintiff's Motion for Summary Judgment as to Defendant Bruce Shalberg* (Doc. # 81), all filed on June 19, 1995. Plaintiff Federal Deposit Insurance Corporation ("FDIC"), as Receiver of The Merchants Bank (the "Bank"), asserts that defendants Medical Industries Management, Inc. ("MIMI") and Medmark, Inc. are liable under certain promissory notes and that defendants Edgar Ellyson, Mary Sue Shalberg[1] and Bruce Shalberg are liable as guarantors of those notes.

██ Rule 56(c) the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose of the summary judg-

ment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

██ When deciding a summary judgment motion, the Court considers all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The nonmoving party, however, "may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). Thus, summary judgment may be entered "against any party who fails to make a sufficient showing to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### A. FACTS

The following facts are either undisputed or, where they are disputed, interpreted in the light most favorable to the non-moving parties.

At different times throughout 1991, the Bank extended loans to finance the operations of MIMI and its subsidiaries, Medmark and Akron Catheter, Inc. ("Akron"). This financing is evidenced by promissory notes executed in the name of Medmark, either individually or as co-maker with MIMI or

---

1. Mary Sue Shalberg has filed a motion for summary judgment asserting that the FDIC's claim against her is barred because the Bank violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq. See Defendant Mary Sue Shalberg's Motion for Summary Judgment* (Doc. # 95) filed June 23, 1995. In its motion for

summary judgment against Mary Sue Shalberg, the FDIC claims that Mrs. Shalberg's ECOA defense is without merit and barred by the statute of limitations. The Court will rule on this portion of the FDIC's motion, along with Mrs. Shalberg's motion, in a separate order.

Akron. At the time the promissory notes were executed, Bruce Shalberg, Jerry Grover, Michael Alexander, Gary Morsch, and Edgar Ellyson were the corporate officers and directors of Medmark. Jerry Grover was president of all three companies.

1. Promissory Notes

On March 6, 1991, Bruce Shalberg, Jerry Grover, Michael Alexander, Gary Morsch and Edgar Ellyson executed on behalf of Medmark a promissory note payable to The Merchants Bank in the amount of $270,000. The note provided a ten percent interest rate, with principal and interest due on demand or no later than April 9, 1991. On April 9, 1991, Jerry Grover, as president of Medmark, signed a promissory note in the amount of $270,000, renewing the March 6, 1991 loan. As a result of this loan, the Bank marked "canceled by renewal" on the March 6, 1991 note. The April 9, 1991 note provided a variable interest rate based on the Bank's base lending rate plus one percent. It required monthly interest payments, with principal and accrued interest due on demand or no later than April 9, 1992. The April 9, 1991 note is in default. As of June 19, 1995, principal and interest due under the note totaled $360,289.27.

On May 15, 1991, Jerry Grover, as president of "Medmark, Inc./Akron Catheter, Inc.," executed a promissory note in the amount of $200,000. The note provided a variable interest rate based on the Bank's base lending rate plus one percent. It required monthly interest payments, with principal due on demand or no later than May 15, 1992. The May 15, 1991 note is in default. As of June 19, 1995, principal and interest due under the note totaled $265,125.26.

On July 22, 1991, Jerry Grover executed a promissory note in the amount of $60,000. He signed his name twice; once as president of Medmark and once as president of Akron. The note provided a variable interest rate based on the Bank's base lending rate plus one percent. It required monthly interest payments, with principal and accrued interest due on December 31, 1991. The July 22, 1991 note is in default. As of June 19, 1995, total principal and interest owed under the note amounted to $88,055.83.

On September 26, 1991, Jerry Grover executed a promissory note in the amount of $800,000. He signed his name twice; once as president of Medmark and once as president of MIMI. The note provided a variable interest rate based on the Bank's base lending rate plus one percent. It required monthly interest payments, with principal and accrued interest due on demand or no later than July 10, 1992. The September 26, 1991 note is in default. As of June 19, 1995, the amount of principal and interest due under the note totaled $1,055,829.65.

As of June 19, 1995, total principal and interest due under the promissory notes executed on behalf of Medmark amounted to $1,769,300.01.

2. Corporate Resolutions

On March 7, 1991, the Medmark board of directors executed a corporate resolution which authorized Medmark to borrow funds only with the approval of all five corporate officers. The first page of the resolution was signed by Bruce Shalberg as Chairman of the Board, Jerry Grover as President, Michael Alexander as Vice President, Gary Morsch as Secretary, and Edgar Ellyson as Treasurer. The second page was signed by Edgar Ellyson as Secretary and witnessed by Bruce Shalberg.

In addition to the March 7, 1991 resolution, the Bank had in its files a corporate resolution of Medmark dated March 11, 1991. The resolution *purports* to authorize Medmark to borrow funds upon approval by any one of the five corporate officers, but the Medmark board of directors never adopted such a resolution. The first page of the resolution contains a signature line for each officer; however, none of them are signed. The second page is signed by Gary Morsch as Secretary and witnessed by Michael Alexander. Gary Morsch and Michael Alexander deny that they signed the resolution in its current form and contend that they would not have signed the second page of the resolution without also signing the first page. Jerry Grover states that he did not have authority nor did he represent to the Bank that he had authority to sign promissory notes or borrow money on behalf of Medmark without the signa-

tures of all five directors of Medmark. Neither the Bank nor the officers of Medmark recollect how the March 7, 1991 resolution made its way to the Bank's file.

### 3. Guaranties

On November 9, 1988, defendants Bruce Shalberg and Mary Sue Shalberg executed an unconditional guaranty of Medmark's debt to the Bank. Under the terms of the guaranty, the Shalbergs' liability is unlimited in amount and their obligations continue until the Bank receives written notice from them to discontinue the guaranty. Prior to February 6, 1992, the Shalbergs did not give written notice to the Bank to discontinue the guaranty.

On May 15, 1991, defendant Edgar Ellyson executed an unconditional guaranty of "any and all present and future advances, liabilities, indebtedness and obligations" of Medmark to the Bank. Under the terms of the guaranty, Edgar's liability is unlimited in amount and his obligation continues until he has given written notice to discontinue which has been acknowledged in writing by an officer of the Bank. Prior to February 6, 1992, Edgar Ellyson did not advise the Bank in writing that he would no longer be responsible for Medmark obligations.

### B. DISCUSSION

#### 1. MIMI's Liability Under September 26, 1991 Promissory Note

■ MIMI admits that it is liable under the September 26, 1991 promissory note; however, MIMI claims that a question of fact exists with respect to the amount due under the note because the note provides for a variable interest rate. MIMI does not specifically controvert the FDIC's calculations as to the amount due under the note. Without citing any factual or legal authority, MIMI baldly asserts that merely because the interest rate is variable, a fact issue exists as to amount damages. This assertion does not set forth specific facts showing that there is a genuine issue for trial and thus summary judgment is appropriate as to the FDIC's claim against MIMI. *See Applied Genetics,* 912 F.2d at 1241.

#### 2. Medmark's Liability Under Promissory Notes Signed by Jerry Grover

■ The FDIC claims that Medmark is liable on the promissory notes signed by Jerry Grover because the March 11, 1991 corporate resolution created actual or apparent authority for Jerry Grover, as president of Medmark, to execute promissory notes on behalf of Medmark. Medmark argues persuasively, however, that a fact issue exists with respect to whether Jerry Grover had actual or apparent authority to sign for such loans without the signatures of his co-officers. Each officer of Medmark denies that the board adopted the March 11, 1991 resolution. Moreover, Gary Morsch and Michael Alexander, whose signatures appear on the second page of the resolution, deny that they signed the resolution in its current form and contend that they would not have signed the second page without also signing the first page. This testimony creates a fact issue as to whether the March 11, 1991 resolution is valid and gave Jerry Grover actual authority to borrow funds on behalf of Medmark based on his signature alone.

The FDIC argues that regardless whether the March 11, 1991 resolution was valid, it gave Jerry Grover apparent authority upon which the Bank reasonably relied. The proximity in time between the March 7, 1991 resolution requiring approval of loans by all officers and the March 11, 1991 resolution allowing loan authorization by only one officer combined with the unsigned signature lines on the first page of the March 11, 1991 resolution, however, create an issue of fact as to whether the Bank's reliance on the March 11, 1991 resolution was reasonable. Likewise, in light of the March 7, 1991 resolution signed by each officer, the Court cannot find as a matter of law that Jerry Grover's position as president in itself created apparent authority for him to borrow funds on behalf of Medmark based on his signature alone.

Thus, an issue of fact as to whether Jerry Grover had actual or apparent authority to borrow funds on behalf of Medmark precludes summary judgment on the four promissory notes signed by him alone.

 

### 3. Liability Under Guaranties

■ Because issues of fact exist with respect to Medmark's liability on the underlying obligations, the Court cannot enter summary judgment on the guaranties executed by Bruce Shalberg, Mary Sue Shalberg and Edgar Ellyson. *See ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo.1993) (to recover for breach of guaranty creditor must prove that there is currently due and owing some sum of money that the guaranty purports to cover).

### C. CONCLUSION

For the foregoing reasons the FDIC's motions for summary judgment should be sustained as to defendant MIMI and overruled as to defendants Medmark, Bruce Shalberg, Mary Sue Shalberg, and Edgar Ellyson.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion for Summary Judgment as to Defendant Medical Industries Management, Inc.* (Doc. # 73) filed June 19, 1995, should be and hereby is sustained, and *Plaintiff's Motion for Summary Judgment as to Defendant Medmark, Inc.* (Doc. # 75), *Plaintiff's Motion for Summary Judgment as to Defendant Edgar Ellyson* (Doc. # 77), *Plaintiff's Motion for Summary Judgment as to Defendant Mary Sue Shalberg* (Doc. # 79), and *Plaintiff's Motion for Summary Judgment as to Defendant Bruce Shalberg* (Doc. # 81), all filed June 19, 1995, should be and hereby are overruled.

**IT IS FURTHER ORDERED** that with respect to the FDIC's claim for attorneys' fees, the parties shall follow the procedure set forth in Rule 220 of the Rules of Practice and Procedure of this Court.

### SUPPLEMENTAL ORDER

On August 7, 1995, the Court entered its *Memorandum and Order* (Doc. # 136) sustaining the FDIC's motion for summary judgment as to defendant Medical Industries Management, Inc. and overruling the FDIC's motions for summary judgment as to defendants Medmark, Inc., Edgar Ellyson, Mary Sue Shalberg, and Bruce Shalberg. The Court issues this *Supplemental Order* to cor-

rect a misstatement in its previous order concerning the date of the original Medmark corporate borrowing resolution. The original resolution is dated March 7, *1988,* not March 7, 1991. Thus, the proximity in time between the original resolution and the second resolution is not a factor which so acutely bears upon the question whether the Bank reasonably relied on the apparent authority granted by the second resolution. The record nonetheless reveals a genuine issue of material fact with respect to the reasonableness of the Bank's reliance. As a result, while plaintiff quite properly brought the Court's error to its attention, the ultimate decision on plaintiff's motions is unaffected.

**IT IS THEREFORE ORDERED** that the *Memorandum and Order* (Doc. # 136) dated August 7, 1995, is supplemented by this *Supplemental Order.*