Walter E. ABELL, Jr., et al.,
Plaintiffs/Appellants,

v.

CITY OF ST. LOUIS,
Respondent/Respondent.

No. ED 83200.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 16, 2004.

878

Mark F. Haywood, Jones, Haywood, Bick, Kistner, & Jones, P.C., St. Louis, MO, for appellant.

Office of the City Counselor, Mark Lawson, Associate City Counselor, St. Louis, MO, for respondent.

MARY K. HOFF, Judge.

Walter E. Abell, Jr., Gary Brandt, Gary M. Gaertner, Jr., Robert G. Huber, Helmut Stein, Charles Lane, Paul Pfeiffer, Walsingham Russell, Sheldon Wight, and Matt Hanewinkel (collectively referred to as Participants) appeal from the trial court's judgment entered in favor of City of St. Louis upon the granting of its motion for summary judgment on Participants' petition for constructive trust and damages. We affirm.

On March 15, 2001, Participants filed their "Petition for Constructive Trust and Damages." In their petition, Participants alleged that they were participants in the City's Deferred Compensation Plan (Plan). Participants further alleged that prior to October 5, 1995, participants in the Plan were limited by the Plan to the selection of certain investment vehicles offered by Prudential Insurance Company of America (Prudential). These investment vehicles included variable annuity investments and fixed return investments.

Participants' petition further alleged that in December 1994, City announced a "restructuring" of the Plan which, among other things, required all participants to transfer their deferred compensation investments from Prudential to Nationwide Life Insurance Company (Nationwide). After March 1, 1995, all existing Prudential variable accounts held by Plan participants were closed, and the City caused funds in those accounts to be transferred to Nationwide.

Participants claimed City owed them a duty to administer the Plan, including its selection of third-party entities to provide investments and services in relation to Plan administration, in such a manner that the Plan participants' best interests would be protected and promoted. Participants additionally alleged the City owed them a fiduciary duty to administer the Plan to further their best interests.

Participants contended City's actions in requiring Plan participants to liquidate their Prudential accounts caused them to suffer a reduction in the fair market value of their investments and to incur unnecessary charges and penalties and thus constituted a breach of City's fiduciary duty. Participants claimed they should receive restoration of the full amounts of the charges, penalties, and lost value of their deferred compensation accounts caused by

the forced transfer, and urged the trial court to impose a constructive trust upon the same.

City filed its answer to Participants' petition and, among other things, asserted as an affirmative defense that Participants' claims were barred by the terms of the Plan agreement (Plan Document) that Participants entered into with City. In Paragraph 18 of City's answer, City specifically referred to Article X, Section 10.03 of the Plan Document, which provides:

> The PARTICIPANT specifically agrees not to seek recovery against the EMPLOYER, the Administrator or any other employee, contractee, or agent of the EMPLOYER or Administrator, or any endorser for any loss sustained by the PARTICIPANT or his Beneficiary, for the non-performance of their duties, negligence, or any other misconduct of the above named persons except that this paragraph shall not excuse fraud or wrongful taking by any person.

City also moved for summary judgment, again citing the above provision as expressly limiting its liability. In its statement of uncontroverted facts, City reiterated the provision and attached a copy of the Plan Document as one of its supporting exhibits. In their response, Participants admitted all of City's stated uncontroverted facts, except for one that alleged that Participants received a copy of a February 1995 communication informing them of the transfer of assets from Prudential to Nationwide and of their need to choose whether to direct their assets to the United States Conference of Mayors Deferred Compensation Program (accounts held by Nationwide) or the Prudential Guaranteed Interest Account. Participants did not support this denial.

On May 29, 2003, the trial court granted summary judgment in favor of City. The trial court first examined the Plan Docu-
ment and determined that the Plan Document created a trust relationship, vested legal ownership of the Plan assets in City, and gave the City the right to administer the Plan as it saw fit, short of fraud or wrongful taking. Then, the trial court examined the limitation of liability provision in Section 10.03 and held that its express limitation of liability precluded Participants from suing City for non-performance of its duties, negligence, or any other misconduct except for fraud or wrongful taking. Finding no evidence of such conduct by City, the trial court granted judgment for City as a matter of law. This appeal follows.

We review the grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We view the record in the light most favorable to the party against whom judgment was entered and take facts set forth in affidavits and otherwise in support of the motion as true unless they are contradicted by the non-moving party's response. *Id.* The summary judgment movant must "show a right to judgment flowing from [material] facts about which there is no genuine dispute." *Id.* at 378. Whether summary judgment was proper is a question of law. *Id.* at 376.

■ In their first point, Participants argue the trial court erred in entering summary judgment in favor of City because its ruling was based on the incorrect legal conclusion that the Plan Document creates a safe harbor for the City against breach-of-fiduciary claims. Participants here do not dispute that the Plan Document governs administration of the Plan but contend that Sections 7.04 and 10.03 of the Plan Document expressly permit claims alleging fraud and requesting the imposition of a constructive trust. They contend that their claims are considered construc-

tive fraud claims under Missouri law and note that their petition specifically seeks relief in the form of a constructive trust.

As previously set out, Section 10.03 of the Plan Document expressly precludes recovery against City for any loss sustained by Participants for non-performance of City's duties, negligence or any other misconduct except "fraud or wrongful taking by any person." Participants cite to *Klemme v. Best,* 941 S.W.2d 493, 495–96 (Mo. banc 1997), in support of their argument that their claims are considered constructive fraud claims under Missouri law and then argue that Section 10.03 would permit them to bring such constructive fraud claims against City. Interestingly, *Klemme,* an action against an attorney for breach of fiduciary duty or constructive fraud, required the Court to determine whether the statute of limitations pertaining to fraud actions, Section 516.120(5), RSMo1986, applied to Klemme's petition. *Id.* at 497. Noting that Section 516.120(5) used the word "fraud," but not "breach of fiduciary duty" or "constructive fraud," and applying the plain and ordinary meaning to the statute's terms, the Court concluded that Section 516.120(5) did not encompass breach of fiduciary duty or constructive fraud. *Id.* Here, Section 10.03 allows Participants to seek recovery against City only for fraud or wrongful taking. Thus, even assuming that Participants' claims could be considered constructive fraud claims under Missouri law, this characterization would not aid Participants. Applying the plain and ordinary meaning to the section's terms, we likewise conclude that Section 10.03 does not encompass claims alleging only breach of fiduciary duty or constructive fraud.

■ To establish actual fraud, Participants must allege and prove: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity, or his ignorance of its truth; 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of the falsity of the representation; 7) the hearer's reliance on the representation's apparent truthfulness; 8) the hearer's right to so rely; and 9) the hearer's consequent and proximately caused injury. *Taryen Dev., Inc. v. Phillips 66 Co.,* 31 S.W.3d 95, 102 (Mo.App. E.D.2000). Our examination of the record before the trial court reveals no allegations or evidence of fraudulent behavior or wrongful taking by City.

Participants further argue that Section 7.04 expressly permits suits requesting the imposition of a constructive trust and thus authorizes another class of claims in addition to those allowed by Section 10.03. Section 7.04 of the Plan Document states:

All assets of the Plan, including all deferred amounts, property and rights purchased with deferred amounts, and all income attributable to such deferred amounts, property or rights, shall remain (until made available to the PARTICIPANT or Beneficiary) solely the property and rights of the EMPLOYER (without being restricted to the provision of benefits under the Plan), subject only to the claims of creditors of the EMPLOYER. Contracts and other evidences of the investments of all assets under this Plan shall be registered in the name of the EMPLOYER which shall be the owner and beneficiary thereof. The rights of the PARTICIPANT created by this plan shall be those of a general creditor of the EMPLOYER, and in an amount equal to the fair market value of the deferred account maintained with respect to the PARTICIPANT. The PARTICIPANT acknowledges that his rights are no greater than those of a general creditor

of the EMPLOYER and that in any suit for an accounting, to impose a constructive trust or to recover any sum under this Plan, the PARTICIPANT'S rights are limited to those of a general creditor of the EMPLOYER. The EMPLOYER acknowledges that the Administrator is the agent of the EMPLOYER.

Thus, Section 7.04 vests ownership of the Plan assets in City and limits the Participants' rights under the Plan to those of a general creditor of City. It extends this limitation to any recovery obtained by imposing a constructive trust.

■ Constructive trusts are equitable remedies employed in a variety of circumstances to set aside wrongful ownership gained through real or constructive fraud. *Estate of Davis*, 954 S.W.2d 374, 379 (Mo. App. E.D.1997). However, real fraud and constructive fraud are not the only grounds for imposing a constructive trust. *Estate of Gulat*, 748 S.W.2d 79, 81 (Mo. App. E.D.1988). Some instances where constructive trusts have been used include suits alleging undue influence, breach of a confidential relationship, and unjust enrichment. *Estate of Davis*, 954 S.W.2d at 379.

■ Participants' contention that Section 7.04 authorizes another class of claims in addition to those expressly allowed by Section 10.03 overlooks the fact that Section 7.04's language is not inconsistent with the limitation of causes of actions contained in Section 10.03, as a constructive trust is an equitable device that can be employed to set aside real fraud. In interpreting contracts, we construe each term and clause of the document to avoid an effect that renders other terms and provisions meaningless. *State ex. rel. Mo. Highway & Transp. Comm'n v. Maryville Land P'ship*, 62 S.W.3d 485, 491–92 (Mo. App. E.D.2001). Were we to adopt Participants' interpretation and read Section 7.04

as additionally authorizing any cause of action that seeks to impose a constructive trust, the effect would be to render the limitation of actions contained in Section 10.03 meaningless. To avoid such an effect, we construe the two sections in conjunction and read Section 7.04 as allowing the use of a constructive trust to set aside wrongful ownership gained through fraud or wrongful taking by City or its agents. We conclude Section 7.04 does not authorize another class of claims in addition to those permitted by Section 10.03. Participants' first point is denied.

■ In their second point, Participants claim the trial court erred in entering summary judgment in favor of City because the court's ruling was premised on the incorrect legal conclusion that the exculpatory provision in the Plan document was enforceable and not contrary to public policy. Participants argue that Section 10.03 is void and unenforceable because it relates to activities "involving the public interest" and because such liability limitation would directly contravene public policy confirmed by the requirement of 26 U.S.C. Section 457(g)(1) that local government deferred compensation plans hold their plan "assets in trust for the exclusive benefit of participant and their beneficiaries."

■ As to private individuals and private interests, an agreement to exempt or exonerate one from the consequences of his own negligence is not against public policy. *Rock Springs Realty, Inc. v. Waid*, 392 S.W.2d 270, 272 (Mo.1965). However, one may never exonerate oneself for future liability for activities involving the public interest. *Alack v. Vic Tanny Intern. of Mo., Inc.*, 923 S.W.2d 330, 337 (Mo. banc 1996). Those wishing to protect themselves from their own future negligence must express that intent in clear,

unambiguous, unmistakable, and conspicuous language. *Id.*

We conclude the Plan clearly, unambiguously, unmistakably, and conspicuously limits City's liability. We fail to see how the City's management of a deferred compensation plan for its employees involves the public interest, and we reject Participants' contention that this exculpatory clause is void as against public policy. As noted by the trial court, a judgment for Participants on this point actually would be against public policy because allowing actions such as theirs would subject plan administrators such as City to constant second-guessing by plan participants and deny plan administrators the flexibility they need to manage such plans. Participants' second point is denied.

We affirm the trial court's grant of summary judgment.

GLENN A. NORTON, Presiding Judge, and KATHIANNE KNAUP CRANE, Judge, concur.