CHOUTEAU DEVELOPMENT
CO., LLC, Appellant,

v.

SINCLAIR MARKETING, INC. n/k/a,
Sinclair Oil Corp., Respondent,

v.

Board of Trustees of Missouri Pe-
troleum Storage Tank Insurance
Fund, Third Party Defendant.

No. WD 65660.

Missouri Court of Appeals,
Western District.

May 30, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 1, 2006.

Application for Transfer Denied
Sept. 26, 2006.

Paul G. Schepers, Kansas City, for appellant.

Stephen Girard Mirakian, Kansas City, for respondent.

Timothy P. Duggan, Jefferson City, for defendant.

RONALD R. HOLLIGER, Judge.

Chouteau Development Co., LLC, ("Chouteau") appeals the trial court's grant of summary judgment to Sinclair Marketing, Inc. ("Sinclair"), finding that Sinclair had no liability to Chouteau for costs incurred when Chouteau removed petroleum tanks from a site previously owned by Sinclair. Chouteau alleges in two points that the trial court erred in finding that, at the time Sinclair surrendered the site to the subsequent owner, Sinclair had no duty under state and federal regulations regarding (1) a previously removed petroleum tank, and (2) three petroleum tanks still located at the site. Because we find Sinclair had a duty, the judgment is reversed and the case is remanded for proceedings to determine the costs Sinclair would have incurred but for the taking.

## Facts and Procedural Background

From 1983 to January 1999, Sinclair owned and operated a gasoline and service station near the junction of I–35 and Chouteau Trafficway. The site was condemned for redevelopment purposes in April 1999, and in August 1999 Chouteau, the redeveloper, took possession via the condemning government authority. During the condemnation, Sinclair objected to the appraised value and asked for a jury trial to establish the proper compensation for the taking. At that trial, per Sinclair's motion, evidence was excluded regarding any duty Sinclair had to perform environmental work related to underground petroleum

storage tanks on the property. Consequently, the compensation Sinclair received in condemnation was not reduced for any environmental work that Sinclair had a duty to perform as of the date it surrendered ownership.

This case is separate from the condemnation case; this case involves Chouteau's subsequent equitable indemnity suit against Sinclair for costs Chouteau incurred in removing underground petroleum storage tanks and cleaning the site. The site was under the jurisdiction of the Missouri Department of Natural Resources (DNR). During Sinclair's ownership, the site contained one underground tank for storing used oil and three underground tanks for gasoline. In May 1998, Sinclair removed the oil tank. On December 16, 1998, the DNR sent Sinclair a letter itemizing remaining work that needed to be done regarding the oil tank's removal: (1) collection and analysis of soil samples near the tank's location; (2) collection of a soil sample up-gradient of the tank's location; and (3) a signed copy of the completed hazardous waste manifest for the removed contents of the tank. The DNR letter continued, "Analytical data contained in the [closure report for the oil tank] indicates excessive petroleum hydrocarbon contamination in the vicinity of the downgradient wall sample. The reported contaminant concentrations warrant further investigation or corrective action.... A final closure letter will not be issued until these deficiencies have been satisfactorily resolved."

On January 4, 2000, Sinclair sent the DNR a letter stating Sinclair no longer owned the site and asserting that Sinclair had complied with its legal responsibilities for site assessment. The DNR replied that a "change in ownership does not relinquish previous owners/operators from their responsibilities for release investiga-

tion and remedial action required by [Missouri law.] The [DNR] again requests that Sinclair Oil Corporation gain access to the site from the new owners for purposes of completing the site characterization work plan...."

Chouteau removed the remaining underground tanks, cleaned the site, and converted the site to a restaurant. Chouteau sued Sinclair to recover the costs of the removal and cleaning. Both parties moved for summary judgment. The trial court granted Sinclair's motion, finding as a matter of undisputed fact that at the time of the taking, Sinclair was in compliance with state and federal regulations regarding the underground tanks. The trial court found that the December 1998 letter from the DNR "did not constitute an order to Sinclair requiring closure or remediation at the site."

The trial court concluded, as a matter of law, that Chouteau could not prevail, because Sinclair had no duty to remove the tanks or clean or close the site. The trial court also concluded that the only legal course that would ensure Sinclair's right to due process of law was a regulatory "assessment action," not litigation in a court of law. Furthermore, the trial court concluded that, because Sinclair had no duty to remediate the site, imposing liability here would violate Sinclair's right to just compensation in the condemnation. Chouteau appeals.

### Discussion

We review a grant of summary judgment de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law[.]" Rule 74.04(c)(6).

■ Chouteau's theory of liability in this case is equitable indemnity. "Indemnity is a right which inures to a person who has discharged a duty which is owed by him, but which, as between himself and another, should have been discharged by the other, so that if the second does not reimburse the first, the second is unjustly enriched to the extent that his liability has been discharged." *State ex rel. Manchester Ins. & Indem. Co. v. Moss*, 522 S.W.2d 772, 774 (Mo. banc 1975). In order to prevail here, Chouteau must show (1) Sinclair had a duty regarding the site at the time ownership transferred; (2) Sinclair breached its duty; (3) by acquiring the property, Chouteau became obligated to perform the duty owed by Sinclair; (4) Chouteau performed Sinclair's duty; and (5) if Sinclair does not reimburse Chouteau, Sinclair will be unjustly enriched.

Chouteau's two points relied on challenge the trial court's finding that Sinclair had no outstanding duty regarding remediation of the site. Because both points turn on whether Sinclair had any duty, we address them together. "Whether a duty exists is purely a question of law." *Hoffman v. Union Elec. Co.*, 176 S.W.3d 706, 708 (Mo. banc 2005). "The breach of the duty of care is a question of fact...." *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 238 (Mo. banc 2001).

■ Sinclair's duty is found in the environmental statutes and regulations, including Mo.Rev.Stat. §§ 319.100 to 319.139 and 10 CSR 20–10.010 to 10 CSR 20–10.074. The regulations regarding underground storage tanks "apply to all owners and operators of an underground storage tank[.]" 10 CSR 20–10.010(1). As the DNR letter shows, Sinclair remains bound by the regulations even following transfer of the property to Chouteau. Specifically applicable to this case, all existing underground tanks must, by December 22, 1998, (A) meet the standards for new tanks, *or* (B) be upgraded to standards set by regulation, *or* (C) be closed in the manner prescribed by regulation. 10 CSR 20–10.021(1). Sinclair does not dispute the application of this duty. Instead, Sinclair argues, and the trial court concluded, that Sinclair "had no duty to remove [underground tanks], remediate[,] and close the site." But whether Sinclair had a duty to *remove* any tanks and *close* the site is not the issue. The issue is whether Sinclair had *any* duty regarding the tanks. Sinclair had a duty to comply with any one of the three standards set by 10 CSR 20–10.021. Sinclair was free, during its tenure on the property, to elect its preference among the three options. But Sinclair was not free to elect *none* of the options. By failing to comply with any of the three options—as a matter of undisputed fact—Sinclair breached its duty.

■ The extent of Sinclair's unjust enrichment is a question of fact to be decided on remand. Sinclair made its election as to the oil tank; Sinclair chose to close the tank. The costs of complete compliance with the regulations relating to closure of that tank are Sinclair's, and it cannot escape those costs through the coincidence of condemnation. The December 16, 1998, letter shows that Sinclair did not complete closure of the oil tank. Sinclair's cost to comply with closure regulations must be determined on remand. As for the remaining tanks, Sinclair was duty-bound, but it remained free to elect whichever outcome suited it. On remand, therefore, Sinclair is bound only to the reasonable costs of the least costly of the three available options. We do not speculate about whether removal or upgrade costs less. We do not assume that the tanks did not comply with option (A) in 10 CSR 20–10.021(1), whereby old tanks are fine if they meet standards for new tanks. Chou-

teau, by removing the tanks and cleaning the site to make it suitable for restaurant use, may have exceeded the duty (and related costs) to which Sinclair was bound; Chouteau's remedy is limited to the costs Sinclair would have incurred in complying with the law.

■ Sinclair pursues two avenues to evade its duty. Sinclair argues (1) finding liability in an equitable indemnity action against a former owner of condemned property violates the takings clauses of the United States and Missouri constitutions; and (2) the only way Sinclair can receive due process is through a regulatory "enforcement" action, not in a court of law. Regarding the first contention, Sinclair argues that the trial court's decision was based on the constitutional issue as an alternative to finding no duty, and by not raising that issue on appeal, Chouteau abandoned it. We disagree: the trial court judgment states "it would be fundamentally unfair to force the involuntary seller to pay remediation and closure costs *that the seller would not have incurred had the property not been taken* [in condemnation.]" In contrast to Sinclair's contention, the constitutional issue therefore depends upon whether Sinclair had a duty and would have incurred costs even absent the taking. Chouteau did not waive the issue; it challenged the lower court's finding that Sinclair had no duty, which is dispositive of the takings clause issue.

■ Extending its takings clause argument, Sinclair contends that charging Sinclair for any cost of environmental compliance will undermine the compensation it received in the condemnation proceeding, resulting in collaterally violating the "just compensation" clauses of the Missouri and United States constitutions. U.S. Const. amend. V, XIV; Mo. Const. art. I, Section 26. Sinclair asserts that it would not have sold the site without imposing the cost of environmental compliance on the buyer, so it should not have to pay any environmental compliance costs in this forced sale. We do not dispute that Sinclair would not have sold the property voluntarily without being protected from environmental liability. But that would obviously have lowered the price Sinclair could have received in a voluntary sale. Sinclair's argument fails the test for determining "just compensation": "The owner is to be put in the same position monetarily as he would have occupied if his property had not been taken." *Almota Farmers Elevator & Warehouse Co. v. U.S.*, 409 U.S. 470, 473–74, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973). Here, at the time of the taking, Sinclair was in the position of having to comply with the regulations regarding underground tanks, with a (past-due) deadline of December 22, 1998. Therefore, if Sinclair is not required to pay what it would have paid to comply with the law, it will be in a better monetary position than it would have been without the taking, and will be unjustly enriched. Because Sinclair had a duty to comply with the regulations and would therefore have incurred compliance costs, Sinclair's takings clause argument fails.

■ Regarding its due process argument, Sinclair asserts that "the environmental response laws do not require a land owner who is conducting legal business activity that may have caused or could cause contamination to cease business and remediate and close the site any time contamination is discovered or suspected." Instead, Sinclair says, "The environmental response laws establish a very specific procedure governing assessment actions." Sinclair argues that only a regulatory proceeding can meet the standard of due process. Sinclair's argument is misplaced. Sinclair is not being forced to remediate and close the site. Rather, Chouteau seeks to hold Sinclair liable for environ-

mental costs that Sinclair had already become responsible for under 10 CSR 20–10.021. Sinclair does not point to any right it can assert exclusively in an administrative proceeding. Nothing prevents Sinclair from fully litigating its rights in this action.

The judgment is reversed and the cause is remanded for proceedings consistent with this opinion.

PATRICIA A. BRECKENRIDGE, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.