**In re Morris CHERVITZ TRUST &
In re Evelyn Chervitz Trust.**

No. ED 87310.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 22, 2006.

Lester H. Goldman, William Sitzer, Dubail Judge, a Professional Corporation, St. Louis, MO, for appellants.

Gary A. Growe, Nicole S. Zellweger, Blumenfeld, Kaplan and Sandweiss, P.C.,

Clayton, MO, Theodore D. Ponfil, Attorney for Trustee, Millie Ponfil, Chesterfield, MO, for respondents.

GARY M. GAERTNER, SR., Presiding Judge.

Appellants, who consist of several beneficiaries and two co-trustees of the Evelyn Chervitz Trust, appeal the judgment of the Circuit Court of St. Louis County granting summary judgment in favor of Respondents, Mahlon Rubin, trustee of the Morris Chervitz Trust (individually "Respondent Rubin"), and Millie Ponfil, co-trustee of the Evelyn Chervitz Trust (individually "Respondent Ponfil") (collectively "Respondents"). In granting summary judgment in favor of Respondents, the trial court ordered (1) the co-trustees of the Evelyn Chervitz Trust to distribute and pay over to Respondent Rubin all remaining assets and/or proceeds of the Evelyn Chervitz Trust, and (2) Respondent Rubin to distribute and pay over the assets received from the Evelyn Chervitz Trust to the beneficiaries entitled thereto in accordance with the trust directions contained in the Morris Chervitz Trust. We affirm.

On October 29, 1980, Evelyn Chervitz ("Evelyn") executed her last will and testament ("Evelyn's Will"). At the time Evelyn's Will was executed and until the time of her death, Evelyn was married to Morris Chervitz ("Morris").

The relevant portions of Evelyn's Will are as follows:

In Item III, Evelyn devises and bequeaths outright to Morris "an amount equal to the maximum marital deduction allowed under the provisions of the Internal Revenue Code...." Item III also discusses federal estate tax consequences of this legacy.

Under Item IV, a residuary clause, Evelyn created a trust at issue in this case ("Evelyn's Trust"), by providing:

[i]f my spouse, [Morris], shall survive me, then all of the rest, residue and remainder of my estate ... I give, devise and bequeath unto my spouse, [Morris], as Trustee, however, to have and to hold the same, in trust, for the use and benefit of my spouse, [Morris], during his lifetime and after his death for the use and benefit of the designated beneficiaries, with powers and duties hereinafter set out.

Item V provides:

[i]n the event that my spouse shall not survive me, then I give, devise and bequeath all of the said rest, residue and remainder of my estate unto the beneficiaries set forth in ITEM VI.... In the event that my spouse shall survive me, then upon the death of my spouse the entire balance of the remaining principal and accumulated income of the trust estate created hereunder the successor Trustees shall distribute free of trust (a) to the beneficiaries set forth in ITEM VI ..., or (b) to those beneficiaries designated by my spouse under the limited power of appointment granted herein.

Under Item VI, Evelyn designated beneficiaries who would receive: (1) the residue and remainder of her estate in the event Morris did not survive her, or (2) the principal and accumulated income of Evelyn's Trust in the event that Morris survived her, but died without exercising his limited power of appointment.

In Item VIII, Evelyn created the limited power of appointment referred to above in Item V. Item VIII states in pertinent part:

... [u]pon the death of my spouse, the entire principal remaining in the trust shall be paid over, conveyed and distributed to such person or persons, but excluding the estate of my spouse, free of trust, in such manner and in such proportions as my spouse may designate and appoint in and by my spouse's last

will and testament executed either before or after my death making specific reference to this power of appointment. This power of appointment is limited so that the property subject to it shall not qualify for the marital deduction in my estate and also shall not be considered as part of the taxable estate of my spouse. Except as herein limited, such power of appointment shall be exercisable by my spouse exclusively and in all events. In the event my spouse shall fail to so direct and appoint the disposition of the principal remaining in the trust, either in whole or in part, by my spouse's last will and testament, then the trust shall terminate and the entire balance of the principal of the trust, together with accumulated income, shall pass according to the terms of ITEM VI of this will.

Evelyn passed away on November 25, 1980. On December 4, 1980, Evelyn's Will was admitted to probate.

On August 14, 2000, Morris created a trust ("Morris' Trust"). At this time, the property constituting the trust estate was $10.00. Under Article II, Morris reserved the right to revoke, amend, or alter Morris' Trust or any subsequent amendments thereto.

Article IV of Morris' Trust provides for the administration and distribution of the net income and principal of the trust estate upon Morris' death. Article IV(A) states, *inter alia,* that upon Morris' death, the trustee shall pay from Morris' Trust taxes, funeral expenses, and various other expenses. Article IV(B) provides for the distribution of the balance of the trust estate to be in specific shares to designated beneficiaries.

Subsequently, Morris amended Article IV(B) of Morris' Trust to provide a different distribution of the balance of the trust estate. Article IV(B) as amended provides for the distribution of the balance of the trust estate to be in specific amounts of money, rather than in shares, to designated beneficiaries, and adds a residuary clause naming Respondent Ponfil and Jody Ponfil as residuary beneficiaries in equal shares.

On October 12, 2000, Morris executed his last will and testament ("Morris' Will"). In Article III, after specifically referring to the power of appointment discussed in Evelyn's Will, Morris exercised his power of appointment by stating the following:

I hereby exercise the power of appointment over Evelyn's Trust and appoint all property subject to the power, including any accumulated and undistributed income, to [Morris' Trust] dated August 14, 2000, executed by me, as the Grantor and as the Trustee....

Morris passed away on November 12, 2003. At the time of Morris' death, the assets of Evelyn's Trust were in excess of $300,000. Morris' Will was admitted to probate on December 11, 2003.

In October of 2004, Evelyn's Trust and Morris' Trust were both registered with the court. Respondent Rubin filed a petition to compel distribution of all assets from Evelyn's Trust to Morris' Trust ("Respondent Rubin's petition"). Respondent Rubin's petition also prayed for the court to declare and interpret Morris' exercise of his power of appointment as valid and lawful. Thereafter, Appellants filed a petition for declaratory judgment requesting the court to, *inter alia,* find that: (1) the assets in Evelyn's Trust be distributed to the beneficiaries designated in Evelyn's Trust, and (2) Morris' exercise of his power of appointment is ineffective, null and void ("Appellants' petition"). On November 22, 2004, the trial court consolidated Respondent Rubin's petition and Appellants' petition.

Subsequently, Respondent Rubin, Appellants, and Respondent Ponfil each filed

their respective motions for summary judgment. On June 17, 2005, all parties stipulated that there were no genuine issues of fact precluding summary judgment. On June 28, 2005, the trial court granted Respondent Rubin's and Respondent Ponfil's respective motions for summary judgment, and denied Appellants' motion for summary judgment. In granting summary judgment in favor of Respondents, the trial court ordered (1) the co-trustees of Evelyn's Trust to distribute and pay over to Respondent Rubin all remaining assets and/or proceeds of Evelyn's Trust, and (2) Respondent Rubin to distribute and pay over the assets received from Evelyn's Trust to the beneficiaries entitled thereto in accordance with the trust directions contained in Morris' Trust. Thereafter, Respondent Rubin and Respondent Ponfil filed respective motions for assessment of attorneys' fees, which the trial court denied. This appeal followed.

When considering an appeal from a trial court's ruling granting summary judgment, our review is essentially *de novo*. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). The trial court's judgment will be upheld if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Id.* at 380. We will affirm the trial court's judgment if, as a matter of law, it is sustainable on any theory. *Boatmen's Trust Co. v. Sugden*, 827 S.W.2d 249, 253 (Mo. App. E.D.1992).

We initially note that because all parties stipulated that there were no genuine issues of fact precluding summary judgment, and because we find that there are no genuine issues of fact precluding summary judgment, our inquiry is limited to whether Respondents are entitled to judgment as a matter of law.

In their first point on appeal, Appellants contend that the trial court erred in granting summary judgment in favor of Respondents because Morris did not validly exercise his power of appointment when he appointed the assets of Evelyn's Trust to Morris' Trust.

■ In determining the meaning of a trust provision, the paramount rule of construction is that the settlor's intent is controlling. *Hertel ex rel. Hertel v. Nationsbank N.A.*, 37 S.W.3d 408, 410 (Mo.App. E.D.2001). We ascertain the settlor's intent by reviewing the instrument as a whole and by considering the circumstances surrounding the creation of the instrument. *See id.*

In this case, because Evelyn's Trust was created within Evelyn's Will, we will ascertain Evelyn's intent by reviewing Evelyn's Will as a whole.

Item VIII of Evelyn's Will, which creates Morris' limited power of appointment, states in relevant part:

... [u]pon the death of my spouse, the entire principal remaining in the trust shall be paid over, conveyed and distributed to such person or persons, but excluding the estate of my spouse, *free of trust*, in such manner and in such proportions as my spouse may designate and appoint in and by my spouse's last will and testament executed either before or after my death making specific reference to this power of appointment.... (emphasis added).

Appellants contend that when Evelyn used the language "free of trust" in Item VIII, her intent was that Morris' power of appointment could not be exercised in favor of any trust. In support of their contention, Appellants assert that Evelyn's Will, and particularly Items III and VIII, "clearly were written in a manner designed to reduce federal estate taxes ...

and to avoid trust administration and expenses for beneficiaries other than [Morris]."

Respondents retort that when Evelyn used the language "free of trust" in Item VIII, her intent was that her trust assets, upon the death of Morris, should be distributed free of her own trust. Respondents maintain that Evelyn's Will read as a whole reveals that Evelyn's intent was to minimize federal estate tax liability for herself and for Morris.

Thus, it is undisputed that at least part of Evelyn's intent in creating Evelyn's Will was to minimize federal estate tax liability.

Regarding Appellants' assertion that Evelyn also intended to avoid trust administration and expenses for beneficiaries other than Morris, the only portions of Evelyn's Will that Appellants reference are Item III, Item VIII, and Item VI(b).[1] Appellants also cite several provisions of Morris' Trust in support of this argument. However, because the paramount rule of construction is that Evelyn's intent is controlling, in discussing Appellants' contention we limit our focus to Item III, Item VIII, and Item VI(b) of Evelyn's Will.

■ Item III of Evelyn's Will only provides for: (1) a legacy to be given to Morris outright consisting of "an amount equal to the maximum marital deduction allowed under the provisions of the Internal Revenue Code. . . ." and (2) a discussion of the federal estate tax consequences of this legacy. Item VIII of Evelyn's Will only provides for: (1) trustees to pay necessary expenses incurred in the management and investment of Evelyn's Trust; (2) trustees to pay over the entire net income, in quarterly or more frequent installments, to Morris as long as Morris shall live; (3) in the event that Morris is not acting as trustee, successor trustees have the responsibility to provide for twenty-four hour nursing care for Morris; and (4) the limited power of appointment outlined above. Thus, we find that Item III and Item VIII are devoid of any language that reveals Evelyn intended to avoid trust administration and expenses for beneficiaries other than Morris.

In Item VI of Evelyn's Will, Evelyn provides that in the event Morris died without exercising his limited power of appointment, distributions of Evelyn's trust assets were to be made directly to individual beneficiaries. In particular, Item VI(b) of Evelyn's Will states that if a beneficiary is a minor, trustees shall make direct distributions to the minor beneficiary or to the minor beneficiary's parent or guardian in the form of a savings account until the minor beneficiary reaches the age of majority. Apparently, Appellants are maintaining that because Evelyn's Will provides that if Morris died without exercising his limited power of appointment any distributions shall be made directly to all beneficiaries, Evelyn intended that Morris' power of appointment also be limited in this regard.

However, Item VIII of Evelyn's Will, which created Morris' power of appointment, provides in relevant part:

[t]his power of appointment is limited so that the property subject to it shall not qualify for the marital deduction in my estate and also shall not be considered as part of the taxable estate of my spouse. *Except as herein limited,* such power of appointment shall be exercisable by my spouse exclusively and in all events . . . . (emphasis added).

---

1. Appellants do not explicitly refer to Item VI(b) in their brief. However, because of Appellants reference to page 36 of the legal file and because of the content of their argument, we can reasonably infer that Appellants are referring to Item VI(b) on page 36 of the legal file.

The language "[e]xcept as herein limited" reveals that Evelyn's intent was to only limit Morris' power of appointment so that the property subject to it shall not qualify for the marital deduction in Evelyn's estate and also shall not be considered as part of Morris' taxable estate. Thus, we find that Appellants contention that Item VI(b) reveals Evelyn's intention to avoid trust administration and expenses for beneficiaries other than Morris is without merit. Additionally, there is no evidence that either of the two specified limitations on Morris' power of appointment were violated.

Furthermore, at the time of the execution of Evelyn's Trust, the only trust that was in existence was Evelyn's Trust. Considering these circumstances, we find that when Evelyn stated in Item VIII that her remaining trust assets should be distributed "free of trust," she intended for free of trust to mean free of Evelyn's Trust. Additionally, Evelyn's Will read as a whole reveals that Evelyn's primary intent was to minimize federal estate tax liability for herself and for Morris. Moreover, there is nothing in Evelyn's Will indicating that Morris' power of appointment was limited in any other manner than as discussed above.

Thus, we hold that Morris validly exercised his power of appointment when he appointed the assets of Evelyn's Trust to Morris' Trust. Therefore, the trial court did not err in granting summary judgment in favor of Respondents. Point denied.

▪ In their second point on appeal, Appellants assert that the trial court erred in granting Respondents' motion for summary judgment because Morris' power of appointment would cause Evelyn's trust assets to be included in Morris' federal taxable estate, in violation of the terms of Evelyn's Trust and Evelyn's intent.

▪ A person, who is not the taxpayer in a particular case, may not attack the validity or merits of the tax assessments made against another. *See Moyer v. Mathas*, 332 F.Supp. 357, 359 (M.D.Fla.1971).

Following Morris' death, Morris' federal estate tax return ("Morris' federal tax return") was prepared and submitted to the Internal Revenue Service ("the IRS"). Morris' federal tax return reflects, *inter alia:* (1) the amount of Morris' taxable estate, and (2) that the net estate tax due was $214,456. The preparer of Morris' federal tax return disclosed to the IRS: (1) Morris' power of appointment, and (2) that the power of appointment does not cause Evelyn's trust assets to be included in Morris' federal taxable estate. There is no evidence the IRS ever disputed this contention.

Furthermore, there is no evidence that any of the Appellants in this case are responsible for paying Morris' estate tax. Thus, because Appellants are not the taxpayers in this case, they may not attack the validity or merits of the tax assessments made against Morris' estate. Therefore, the trial court did not err in granting Respondents' motion for summary judgment. Point denied.

Based on the foregoing, we affirm the judgment of the trial court.

GEORGE W. DRAPER III and KENNETH M. ROMINES, JJ., concur.